## MAYES VS. HENDRY.

1. VENDOR'S LIEN. *Taking security presumptive waiver of.*

   The acceptance of other security raises a presumption that the vendor intended to waiver his equitable lien on the land for the purchase money, but it is a matter of intention, subject to proof.

2. ——————: *The Remedy.*

   It is not necessary to the enforcement of a vendor's lien in equity, that he should first exhaust his remedy at law. Upon a valid agreement for the sale of land, the vendor until conveyance, holds the legal title in trust for the vendee, and after conveyance, the vendee holds it charged with a trust for the purchase money.

3. PRACTICE. *Time of answering.*

   It is within the discretion of a chancellor to permit an answer to be filed after the time allowed for filing it, which will not be interfered with by the Supreme Court, except in cases of plain abuse or manifest mistake. It is not enough that a defendant has a meritorious defense. It must be used in a fit time.

4. ——————: *Necessary parties must be in court:*

   Although want of necessary parties must be taken advantage of by answer or demurrer, yet if from the nature of the case, a complete and final settlement of the rights of the parties before the court, cannot be had amongst themselves, the chancellor should, of his own motion, order other necessary parties to be brought in.

APPEAL from *Washington* Circuit Court.

Hon. ——————, Circuit Judge.

*J. D. Walker*, for appellant.

*L. Gregg*, for Appellee.

EAKIN, J.:

Appellee, Alexander Hendry, on the 20th of September, 1875, filed a bill against Samuel and Joseph Mayes, to assert and foreclose an equitable vendor's lien for the purchase money of certain lands, alleging that he sold to them, and conveyed to Samuel Mayes a third interest in a certain tract upon which there was a mill, for the sum of $2500, also one-sixth in the same tract which belonged to John Hendry, but which said appellee had a right to sell, for the sum of $1250, for which said John Hendry executed the conveyance.

Also, the entire amount of a certain other tract, lying adjacent, for the sum of $1300, which appellee and his wife at the time conveyed, and attempted to describe properly in the deed.    The bill sets forth the true description, and offers to correct any errors in the conveyance, if such there be.    The deed being in possession of defendant, Samuel Mayes.

The entire consideration of the said sale, composed of said several tracts, was $5050, to be paid as follows:    $1000 to the order of complainant, on or before January 1st, 1875, with interest at the rate of 15 per cent. per annum, from its date of June 15th, 1873.

There were due from said complainant, two notes to W. F. Wilson, one for $600, dated June 11th, 1872, due at twelve months with interest at the rate of twenty per cent. per annum till paid; and the other for $132.50, dated January 1st, 1872, due at one day, with interest at the rate of 15 per cent. per annum until paid.    The former of these notes was secured by a trust deed to Wilson, on most of the real estate conveyed, except the mill property, but it included the residence.    Said Samuel Mays being aware of this incumbrance, agreed as a part of the consideration of the purchase, to pay these notes to Wilson within a short time, not exceeding twelve months, and it was further agreed between complainant, said Wilson, and said Samuel Mays, that said Wilson would continue to hold his trust deed as a security for his notes and interest, and so much therefore of the purchase money, was left on open account between complainant and Mays.    In part performance of this agreement, said Samuel, afterwards paid up the interest on said Wilson's notes to the first day of July, 1874.

For the remainder of the purchase money, said Mays executed a certain other note, which complainant had cashed in bank, and also gave him mules and other property, leaving

unpaid only the first named note, and the principal of the Wilson notes with interest from the first day of July, 1874.

Joseph Mays united with Samuel in the execution of the first note. At that time he was insolvent. The complainant alleges that he did not take his name as security, or rely upon it as such, but because he offered to sign, and complainant supposed from the representations of the parties, that he had an interest in the purchase. He with said Samuel has since been in possession.

Prayer for an account between complainant and defendants, and a decree for the whole amount due, which is averred to be $2,247.20, or thereabout at the time of filing the bill; that his vendor's lien may be declared therefor, and the lands sold on default of payment, and for general relief. No account is sought of the sum due Wilson, nor is there any prayer that a portion of the unpaid purchase money be appropriated to his debt.

At the October term succeeding, Joseph Mays disclaimed, and Samuel demurred. The demurrer was overruled as to all the points specified, except for the cause that inasmuch as it appeared from the bill that Joseph Mays was a surety on the first note, there was as to that no equity for a vendor's lien. This was cured by an amendment causing the bill to appear as above recited.

The other causes of demurrer overruled were, for want of equity; want of certainty in the description of the lands; and failure of the bill to show title in complainant.

After amendment, defendant Samuel Mays, was by order of court, allowed until the 15th of December, 1875, to file his answer. He failed to do so, and at the next April term, the bill was by order of court taken as confessed. About two weeks afterwards at the same term, defendant moved to set

aside the said order, and for leave to answer, tendering at the same time a sworn answer with his motion, all of which is brought on the record.

The grounds of the motion were in effect, that he had a meritorious defense; that his answer was drawn, verified and left with one of his attorneys, prior to the 15th of December; that the attorney left home, and was unavoidably detained until about the 25th, and that defendant supposed it had been filed, that the parties on both sides had been engaged in taking depositions, and there was a pending agreement for further depositions when the decree *pro confesso* was taken, that complainant shortly before the interlocutory decree had been taken, had amended his bill as to material allegations.

With regard to the answer exhibited and tendered with the motion, it may suffice to say, that it traversed many of the material allegations of the bill, and presented matter which, if sustained by proof, would have materially affected the decree in favor of defendant. Upon its face it is meritorious.

On the 1st of June the court refused the motion to set aside the interlocutory decree; the amendment made at the time of taking it, was withdrawn by complainant; and a final decree was rendered.

The decree finds the sale of the several interests and parcels of land, as set forth in the bill, describing more particularly the metes and bounds of the second tract; that defendant Samuel Mays agreed to pay therefor, the aggregate sum of $5050. That he had paid all of said amount except $1000, and interest thereon at 15 per cent. per annum, from June 5th, 1875, which was to be paid directly to plaintiff, and except also the sum of $732.50, due to Wilson on the two notes held by him, and which the defendant assumed to satisfy, and the interest of which he had paid up to July 1st, 1874; that complainant was not released from his liability on said notes, nor

in anywise secured against the same, save by defendants promise to pay Wilson; that there was due and owing complainant the sum of $2446, consisting of principal and interest on said notes; that the $600 note of Wilson was a prior lien with interest from July 1st, 1874, amounting at the time of the decree to $830; that the defendants entered upon the posses sion of the lands at the time of the purchase, and that Joseph Mays had no interest; that he was insolvent and not accepted as surety, and that complainant retained his vendor's lien.

It was ordered that complainant recover the sum of $1616, being the balance due after deducting said sum of $830, with interest on $1132.50 thereof, at 15 per cent., and interest on $485.50 at the rate of 6 per cent. from the date of the decrees,

Time was given for the payment of said sum of $1616, and upon default it was ordered that a special *fieri facias* might issue to the Sheriff, as commissioner, to carry out the decree and make sale of enough of the property to pay said sum of $1616, and in case of deficiency, that execution issue for the remainder; and that said defendant hold said premises subject to the payment of said sum of $830, in addition to complainant's lien, which last sum is held as "yet due of the purchase price agreed to be paid to said Samuel Mays." Defendant appealed.

There was no error in overruling the demurrer, as to all the points, except as to that regarding the waiver of the vendor's lien, by the acceptance of Joseph Mays as surety on the note. Upon this point we may presume the demurrer was properly sustained, although the bill was amended to meet the objection, and as it appears now in the transcript, shows circumstances which rebut the waiver. The rule as recognized in this court is, upon this point, that the acceptance of other security raises a presumption that the vendor meant to waive his equitable lien for the purchase money; but it is nevertheless a matter of

intention. The vendor may show, from circumstances, that such was not the intention, and in that case the lien will be protected, although other security be taken. As to other matters the bill shows sufficient equities upon its face to entitle complainants to some relief. The supposed uncertainty in the description of the lands, should have been met by a motion to make the complaint more definite and certain, and not by demurrer. It is not plainly defective as it stands

The lands are described by courses, distances, measurements and contiguous boundaries. If these measurements and contiguous boundaries exist, the lands may be located by them. If they do not, that should be shown by answer. There must, in all descriptions of lands, otherwise than by the government surveys, be marks and monuments, or contiguous boundaries, of which the court cannot take judicial cognizance. If they are such as may be found by persons acquainted with the locality, they must be taken for granted as existing, unless denied.

If the boundaries of the last tract be imperfectly described, enough, nevertheless, appears in the bill to show that there was a sale of a certain tract lying east and north of the Mill tract, which the complainant conveyed by what he supposed to be the true boundaries; that he has not control of the deed, which is in defendant's possession, and that he is willing to correct the description if it is erroneous. Although, under the Code of Practice, he could not file a bill merely for discovery of the former description; yet, in a bill filed to enforce other plain equities, he may well proffer, on behalf of defendant, and to do him complete justice, to correct any error he may point out, which would work to his prejudice. If the defendant refuses to point out any, it must be presumed, not only that the description is true, but sufficiently definite to enable a competent surveyor to locate the land.

It is contended that the complainant below, having executed

deeds of the lands, and divested himself of the legal title, cannot now enforce his equitable vendor's lien, without having first exhausted his remedy at law.    In other words, that a proceeding to enforce his equitable lien is upon the footing of a creditor's bill to reach equitable assets, and cannot be brought without first showing judgment at law, return of *nulla bona*, insolvency, or something else, to make it clear that complainant is remediless at law.    The analogy of the cases does not hold good, inasmuch as this is not a bill to reach equitable assets, but rather to reach a legal estate, and subject it to equities which a Court of Equity alone can recognize and enforce.   It is simply to declare a trust for the purchase money upon specific property, which trust is raised in equity and continued until the debt becomes barred, and is based upon the same idea and is indeed part of the doctrine of specific performance.    That doctrine is that upon a valid agreement for the sale of land, the vendor, until conveyance, holds the legal title in trust for the vendee, and after conveyance, the vendee holds it charged with a trust for the purchase money.  Although this trust rests upon no express contact—is the mere creation of courts of equity, and is guarded and qualified carefully to protect innocent purchasers—there is no reason why, as between parties and those bound by notice, it may not be considered as specific as any resulting or other implied trust.

It is not easily comprehensible what is meant by saying that it is neither a *jus ad rem*, nor a *jus in re*, and that it has no existence until a bill be filed to enforce it.   It is plainer language to say that it does not bind innocent purchasers, before *lis pendens*, and that it is merely personal to the vendor, and does not pass to the assignee of the debt.   Within its scope, however, as carefully guarded by courts of equity, it is a specific lien co-existent with the debt—binding from the beginning, as well before suit as after, all who take the land with notice.

These principles were recognized and declared very forcibly and clearly by this court more than twenty years ago, in an opinion delivered by the present Chief Justice (See *Shall* v. *Biscoe*, 18 Ark., 142), in which the nature of this equitable lien was thoroughly discussed. Nothing indeed is left to be added.

The enforcement of such liens has been the common practice in this State since that time, and it has never been considered necessary to allege or show that the remedy at law had been exhausted.

The action of the courts of the several States in America, has not been uniform with regard to this equitable lien. In some it has been rejected wholly, and in others received only in a modified form. The courts of Maryland and Indiana have held that the remedy at law must be first exhausted. But the weight of American authority is in favor of the English doctrine. When the lien is recognized at all, it is best that it should be efficient, and rest upon the idea of a trust, which follows the lands, with notice of its existence, and which like other trusts may be specially enforced in favor of the vendor without regard to the general solvency of the vendee. It does not conflict with this view, to hold that it is merely personal to the vendor and does not pass to the assignee of the debt. It is the satisfaction of the vendor alone which is contemplated in equity, and those who take the notes are supposed to have given full value, and to have relied upon their legal rights upon them.

The failure of the bill to show that the legal remedy of complainant had been exhausted, did not therefore affect its equity. Upon the whole we find no error in overruling the demurrer.

Ought the court to have granted leave to defendant to file his answer after default and the order to take the bill as con-

fessed? The answer appears on inspection to be meritorious, and the court might well, in furtherance of justice, have allowed it to be filed. But this was a matter within the discretion of the Chancellor. The Circuit Courts are the great reservoirs of original jurisdiction, entrusted with the active administration of justice amongst the citizens. It is the duty of the presiding judges to preserve the order of business in their courts, and see to it that cases proceed with dispatch, and in due course of practice. For these purposes a large discretion must of necessity be entrusted to them; and this court is ever loth to interfere with that discretion, except in cases of plain abuse, or manifest mistake.

The judges are chosen by the people, are learned in the law, and have weighty responsibilities, which they are doubtless anxious to discharge with fidelity. Presiding in the court they have personal cognizance of the conduct of suitors and attorneys, and are better able to judge of matters of laches, than this court can from the meagre contents of the transcript.

It is not enough to have a meritorious defense. It must be used in apt time, or the business of the courts might be interminably delayed. Suitors on both sides have rights, and neither should be allowed to delay the other, unreasonably. In this case, time was given beyond the return term of the summons, to answer. The time was ample, and the answer actually prepared, but not filed, either at the time designated nor afterwards; until, at the next term the bill had been taken *pro confesso*. Suitors are bound by the action of their attorneys in matters of practice, and although this may seem to us a case of hardship, we cannot say that the Chancellor abused his discretion, or that there was error in refusing leave to file the answer out of time. Upon default of answer the decree may be rendered on the bill and exhibits. Nothing else is confessed, and there are no issues.

We come now to the final decree, rendered upon the bill and exhibits, taken as confessed. It seems to us clearly such as a Court of Chancery should not have pronounced, inasmuch as it fails to make a definite and final settlement of the rights of the parties actually before the court.

The sale to Mays was not a sale of an equity of redemption, subject to a prior lien. It was a sale of the whole subject matter, at full value of the property, with the understanding that upon payment of the price agreed, Mays was to take the property discharged of all liens. To effect this it was agreed between all parties interested, that a part of the purchase money should be appropriated to the discharge of Wilson's $600 note, which constituted the lien ; another part to Wilson's other note upon complainant, for which there was no lien ; and the balance to complainant. The vendor's lien is set up for *the whole*, and so allowed by the court, but the decree is only for the payment to complainant of so much as was to be paid to himself, and so much as was to be paid to Wilson on the lesser note not secured by lien—and no order whatever is made for the payment to any one of the balance of $830, which is left in defendant's hands, evidently for the purpose of being paid over to Wilson. The sale should have been ordered for the whole amount of the sum found due, and the money should have been brought into court and applied to the discharge of the lien—or, if deemed advisable, and Wilson had been willing, the amount of Wilson's lien might have been fixed, declared and continued as a charge upon the lands in defendant's hands. As it now stands, if defendant should fail to pay Wilson, and the latter should collect the debt of complainant, he would be obliged to renew the suit for the enforcement of the remainder of his lien. The decree is incomplete.

Again, if it should turn out that more is due on Wilson's note than the amount recited in the decree, which may be the

case, the defendant would be bound to pay it all to save the land, and a new litigation would spring up between him and complainant for reimbursement.

The court, in Wilson's absence, takes the account of what is due him and fixes the amount to be paid him by Mayes. On the supposition that Wilson has a lien the court leaves so much of complainant's lien unexecuted, and orders a sale of the lands for the remainder, without any action upon Wilson's lien, or prayer for its enforcement. This is adjusting the rights of parties by halves—without that complete and final settlement which chancery should always endeavor to acomplish—and the necessity for which is often the only ground of jurisdiction.

If the sale had been merely of an equity of redemption, subject to a prior lien, and that equity had been estimated at its value with reference to the burden, the complainant might have foreclosed his vendor's lien without any reference to the older encumbrance, and had a sale of the equity for the payment of the purchase money. But this is not such a case. The sale, by agreement of all parties, was to be made a clear sale, and the purchase money appropriated to relieve the older lien. It was for full value. The rights of the parties, as between themselves, cannot be adjusted, without an account with Wilson, and that cannot be taken unless Wilson be made a party. If being a party he should elect to let his debt remain as a lien upon the land and give further indulgence to defendant, discharging the complainant, the amount due complainant might then be ascertained in a manner to bind all parties, and close the litigation. in which case the land might be sold subject to Wilson's lien, which also would be clearly ascertained.

Although under our Code, the want of necessary parties must be taken advantage of, by demurrer or answer, or it will

be deemed to be waived, this is to be understood only of such cases as in their nature allow of a complete and final settlement of the rights of the parties before the court, amongst themselves. When this cannot be done, it is made the duty of the Chancellor to order the other necessary parties to be brought in (see sec. 4481 of Gantt's Digest), and this he should do of his own motion at any stage of the cause, when the necessity becomes apparent, otherwise parties by consent, or failure to demur, or declining to insist on proper parties by answer, might compel a court to proceed to nugatory decrees which would settle nothing, and leave a subject matter open to litigation. *Simms et al.* v. *Richardson & May,* 32 Ark., 297

No proper decree can be entered in this cause without making Wilson or his representatives parties. The Chancellor erred in attempting it, and for this cause the decree must be reversed, and the cause remanded, with instructions to the court to direct Wilson to be made a party and brought in, and to allow complainant to amend his bill with apt averments for the purpose and also to allow defendant to answer the whole bill, and for other and further proceedings not inconsistent with this opinion.