GRIFFIN et al. v. SMITH.

(Circuit Court of Appeals, Eighth Circuit. February 19, 1906.)

No. 2,215.

VENDOR AND PURCHASER—VENDOR'S LIEN—WAIVER—TAKING OTHER SECU-
RITY.

 The taking by a vendor of an independent security for the payment of
the purchase price, such as a negotiable note of a third party, or a mort-
gage or pledge of other property, is prima facie evidence of a waiver of
the lien upon the property he sells, and it casts upon him the burden of
proving its subsequent existence.

 [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and
Purchaser, §§ 733–750.]

(Syllabus by the Court.)

Appeal from the United States Court of Appeals in the Indian
Territory.

For opinion below, see 82 S. W. 684.

Preston C. West, for appellants.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This appeal challenges a decree for
the foreclosure of a vendor's lien for $500 upon the undivided half
of the Capitol Hotel and its grounds, situated in Okmulgee in the
Indian Territory, and the question it raises is whether the purchase
price of the property was $2,000 or $2,500. Smith, the vendor, con-
veyed one undivided half of this property to George M. Griffin and
Harry W. Griffin and the other undivided half to W. E. Gentry, on
March 23, 1901, by a deed which recited a consideration of $2,500.
The Griffins had already paid him $50 on account of the purchase
price and, at the time of the delivery of the deed, he took from
them their promissory note for $700, payable on September 23, 1901,
and a mortgage upon other property to secure its payment, and he
obtained from Griffin $1,250 in cash which made in the aggregate
$2,000. He testified, and George M. Griffin denied, that the latter
verbally agreed to pay him $500 more for the property in a few days
so as to make the purchase price $2,500. His agent, Thornburg, tes-
tified that about the 7th of March, 1901, Griffin had told him to
agree to pay Smith $2,500 for the property, that he had made that
agreement in behalf of Griffin and that the latter had admitted that
$2,500 was the agreed price of the property. Another witness testi-
fied to a like admission. Griffin denied that he had ever given any
authority to Thornburg to agree to pay $2,500 for the property, denied
the alleged admissions and testified that the agreed price of it was
$2,000. The notary public who took the acknowledgment of the deed
gave testimony to the effect that on the day it was delivered the
vendor told him that he was to receive $2,000 for the property.
There was no written evidence except the recital of the consideration in
the deed to the effect that the purchase price of the property was $2,500.
On the other hand, the record contains a written contract between the

143 F.—55

vendor, Smith, and the Griffins, dated February 19, 1901, whereby the former agreed to sell and the latter to buy the hotel property for $2,000 within 10 days from that date, a written contract of extension of the time of performance of the contract of purchase in these words: "March 16. Received of G. M. Griffin $50 to apply on payment of property contracted to him as Capitol Hotel block contract is extended by this payment," signed by the vendor, the promissory note of the Griffins for the $700, dated March 23, 1901, and payable September 23, 1901, an indorsement of the payment of $100 thereon dated August 29, 1901, and an indorsement of the payment of $25 thereon, dated September 14, 1901, a mortgage of other property made by the Griffins on March 23, 1901, to secure the payment of their note for $700, and undisputed testimony that between February 15 and March 23, the Griffins contracted to sell the undivided half of the hotel property to Gentry for $1,250, that Gentry paid this $1,250 to Smith and received his title by Smith's deed of March 23, 1901, pursuant to this agreement, and that the Griffins have paid their note.

The taking by a vendor of an independent security for the payment of the purchase price of the property he sells, such as a negotiable note of a third party, or a mortgage or pledge of other property, is prima facie evidence of a waiver of his lien, and it casts upon him the burden of proving its subsequent existence. Cordova v. Hood, 17 Wall. 1, 6, 21 L. Ed. 587; Richardson v. Green, 46 Ark. 267, 270; Springfield & Memphis R. R. Co. v. Stewart, 51 Ark. 285, 10 S. W. 767; Mayes v. Hendry, 33 Ark. 240, 245; Lavender v. Abbott, 30 Ark. 172, 178. Our faith in questionable stories has been strengthened by constant exercise until it is sometimes triumphant. But in view of the facts that the vendor in this case made a written agreement to sell this property to the Griffins for $2,000, that he accepted $50 in part payment of its purchase price and signed a contract of extension of the time of payment which named no new price, that, when he made his deed, he took the balance of the $2,000 in the form of $1,250 in cash from Gentry and the note and mortgage of the Griffins upon other property for $700 and that the two payments made by the latter before their note fell due were not applied in part satisfaction of the additional $500 which the vendor insists had been due to him ever after March 23, 1901, but were indorsed upon the note which was not yet due, it has proved too great a strain upon our credulity to believe that this vendor conveyed his property to the Griffins without securing any mortgage back upon it, or note, due bill or other written evidence of their liability for the additional amount which he claims was due him for the transfer. A careful reading and analysis of all the evidence has forced our minds to the conclusion that the agreed price of this property was not $2,500, but $2,000. The decrees of the courts in the Indian Territory must therefore be reversed and the case must be remanded with instructions to dismiss the bill. It is so ordered.