## FISHER v. SHROPSHIRE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 54. Argued November 22, 1892. — Decided January 3, 1893.

The courts of the United States enforce grantor's and vendor's liens, if in harmony with the jurisprudence of the State in which the action is brought.

The doctrine of a vendor's lien, arising by implication, seems to have been generally recognized in the State of Iowa.

If a suit to enforce a vendor's lien upon land in Iowa is pending at the time when the vendee conveys the land to a third party, no presumption can arise that that lien has been waived, as against the grantee of the vendee, whatever may be the general rule in that State as to the presumption of the waiver of a vendor's lien, in case of a conveyance of the tract by the vendee.

The filing of the petition in this case to assert and enforce a vendor's lien was notice of its assertion and prevented third parties from acquiring an interest in the subject-matter against and superior to the lien.

It does not appear to be necessary in Iowa to exhaust the remedy at law before proceeding to enforce a vendor's lien.

Under the circumstances of this case, as detailed in the opinion; *held*,

(1) That a vendor's lien existed on the property for the complainants' benefit which could be enforced by them for the balance due them on the purchase money;

(2) That George Lyle was not a necessary party to the proceedings to enforce it;

(3) That there was an error in the master's computation, which made it necessary to remand the case.

In 1876, Mrs. Loretta Shropshire owned in her own right five hundred and forty acres of land in Iowa, derived from the estate of a former husband, forty acres of which constituted her homestead. May 1, 1877, she borrowed from the German Savings Bank of Davenport, Iowa, $10,000 for three years, with interest at the rate of ten per cent per annum, payable semi-annually, and she and her husband, Alexander C. Shropshire, executed a mortgage on the five hundred and forty acres. Judgments were rendered against her for various sums, and her brother, Alexander Rhinehart, became her surety upon a bond for a stay of execution. The stay having expired, all the real estate of Mrs. Shropshire, except her homestead, was held for sale, subject to the prior mortgage of the bank.

The statute of Iowa provides that " in no action where the defendant has . . . stayed execution on the judgment, shall he be entitled to redeem." McClain's Ann. Code, § 4331. In February, 1878, Mrs. Shropshire applied for assistance to John Lyle, and it was arranged between her brothers, Alexander K. and Jehu Rhinehart, and herself, that Jehu Rhinehart should bid in the property at the sheriff's sale, and, if she

succeeded in raising the amount of the judgment, that he should deed the land to her or to whomsoever she might direct. Lyle thereupon advanced to Mrs. Shropshire $4250, and Jehu Rhinehart executed to him a quitclaim deed, dated March 28, 1878, for five hundred acres of the land purchased at the sheriff's sale, for the expressed consideration of forty-two hundred and fifty dollars, and Mrs. Shropshire and her husband executed to Lyle a quitclaim deed for the forty acres of land constituting the homestead tract, dated March 20, 1878, and expressing a consideration of one thousand dollars.

May 1, 1878, Mrs. Shropshire and her husband executed to Lyle a quitclaim deed of the entire tract, the consideration named being fourteen thousand two hundred and fifty dollars. May 1, 1879, Lyle purchased, and took an assignment of the German Savings Bank mortgage. Mr. and Mrs. Shropshire continued in the possession of all the lands deeded to Lyle until January 1, 1881, when the property was surrendered to him, and he and those claiming under him have continued in possession from thence hitherto.

The original bill in this case was filed by Mrs. Shropshire, February 26, 1883, in the District Court of Jasper County, Iowa, in which county the lands were situated, against John Lyle as sole defendant. On March 1, 1883, Lyle conveyed the lands to his grandson, George Lyle, and he took possession on the next day. The cause was then removed to the Circuit Court of the United States for the Southern District of Iowa, on September 14, 1883, on the application of John Lyle, upon the ground that he was a citizen of the State of Illinois, and the plaintiff, Mrs. Shropshire, was a citizen of Iowa. The bill was amended January 15, 1886, by making A. C. Shropshire, the husband, a party complainant, and on August 27 of that year, the bill was further amended. The bill as amended in substance alleged that the advancement by John Lyle of $4250 was a loan; that the quitclaim deeds of Rhinehart, Mrs. Shropshire and her husband were intended simply as mortgages to secure the amount of the loan; that upon that loan and the German Savings Bank mortgage various payments had been made; that John Lyle, being the holder of the quit-

claim deeds and the savings bank mortgage, bought the lands in question of Mrs. Shropshire at the price of $42.50 per acre, and took possession of the same about January 1, 1881; and that there was a large amount of the purchase price still due, which defendant had neglected and refused to pay. The bill prayed that an account be taken of the amount due complainants; that the defendant be decreed to pay the balance due upon the purchase price of the land; and that a vendor's lien be established therefor; and for general relief.

The defendant answered under oath, denying all the material averments of the bill, and insisting upon the deeds as absolute conveyances, and alleged that in 1882 he sold, and in 1883 conveyed, the lands in question to one George Lyle, and that the deed was delivered and recorded before this suit was brought. Defendant also averred that Mrs. Shropshire was largely indebted to him, and that upon a final settlement, January 27, 1880, a balance of $7900 had been found due to him from her; he further declared it to be wholly false and without color of truth that he purchased the farm from Mrs. Shropshire, January 1, 1881, at $42.50 per acre, or at any other sum or price; and that the alleged sale was "without any basis of fact whatever."

Defendant also moved the court to dismiss the bill for defect of parties, in that George Lyle had not been made a party defendant, which motion was overruled.

An interlocutory decree was entered November 11, 1886, determining that the deeds from the complainants to the defendant were mortgages, and that on or about January 1, 1881, defendant John Lyle had agreed to take the lands and pay therefor $21,600. A special master was appointed to take and state all the accounts between the parties, and in December, 1886, he filed his report, showing a balance due Mrs. Shropshire upon the purchase of the land in the sum of $7807.31, or in another view, of $2028.51, with interest from January 1, 1881. The accounts thus stated in the alternative were arrived at by charging Lyle with the $21,600 and crediting him with an alleged individual indebtedness of Mrs. Shropshire as well as the joint indebtedness of husband and wife, amount-

ing together to $18,687.13, and deducting $4894.44 payments, leaving $7807.31; but the master reported that. if the court should be of opinion that certain sums, which he enumerated and described as "individual indebtedness" of A. C. Shropshire, amounting in the aggregate to $5778.80, should also be deducted, then the balance due was but $2028.51.

May 28, 1887, a final decree was entered confirming the master's report and decreeing the payment of the sum of $10,810.46 with interest at six per cent from that date, establishing a vendor's lien against all the lands above referred to, and directing a sale on default of payment. From this decree the pending appeal was prosecuted. The opinion of the Circuit Court is reported in 31 Fed. Rep. 694.

*Mr. A. H. McVey,* (with whom was *Mr. C. C. Cole* on the brief,) for appellants.

Early cases in Iowa under our statute recognize the status of the vendor's lien. The cases, however, were not satisfactory, and the legislature amended the law and greatly modified the same. Since the adoption of section 1940 of the Code, the doctrine has been greatly modified, and the courts have so held. In this state of the law we beg leave to submit that no vendor's lien should be allowed in this case because the amount claimed was an unliquidated claim. It is settled by the courts that a lien does not exist as a security for an unliquidated and uncertain demand. *Payne* v. *Avery,* 21 Michigan, 524; *Patterson* v. *Edwards,* 29 Mississippi, 67; *Sears* v. *Smith,* 2 Michigan, 243; *Vandoren* v. *Todd,* 2 Green, (3 N. J. Eq.) 397.

That the demand of plaintiff was an uncertain demand there can be no question, because it was not determined until after several days' trial what the demand of plaintiff was, and it involved an inquiry concerning a large number of accounts. Consequently the rule that we have stated above fully applies in this case.

There is no vendor's lien in this case because the deeds from the complainant to the defendant do not reserve any lien.

They are absolute in terms, and no lien whatever is even hinted at. Sec. 1940 of the code provides as follows: "No vendor's lien for unpaid purchase money shall be recognized or enforced in any court of law or equity after a conveyance by the vendee unless such lien is reserved by conveyance, mortgage or other ·instrument duly acknowledged and recorded, or unless such conveyance by the vendee, is made after suit brought by the vendor, his executor or assigns to enforce such lien." Before this section was enacted the rule was that there was no lien as to an innocent purchaser, unless he purchased after suit. The statute changed this rule. Now, where there is an absolute deed from the vendor to the vendee, without reservation of a lien, no lien can attach. *Rotch* v. *Hussey*, 52 Iowa, 694 ; *Reed* v. *Chubb*, 9 Iowa, 178 ; *Hagan* v. *Birch*, 8 Iowa, 309 ; *Elliott* v. *Stevens*, 10 Iowa, 418. As George Lyle had no notice of a lien, as to him there is none. He is clearly within the protection of the statute.

A bill in equity to enforce the vendor's lien, must show that the complainant has exhausted his remedy at law against the personal estate, or must aver such facts as show that the complainant cannot have a full, complete and adequate remedy at law. And this, complainant has not done. *Eyler* v. *Crabbs*, 2 Maryland, 137; *S. C.* 56 Am. Dec. 711 ; *Stevens* v. *Hurt*, 17 Indiana, 141; *Ridgeway* v. *Toram*, 2 Maryland, Ch. 303 ; *Hall* v. *McCubbin*, 6 Gill & J. 107; *Scott* v. *Crawford*, 12 Indiana, 410 ; *Richardson* v. *Stillinger*, 12 Gill & J. 477.

There is a fatal defect of parties. George Lyle should have been made a party. *Shields* v. *Barrow*, 17 How. 129 ; *Mallow* v. *Hinde*, 12 Wheat. 193; *Wolfe* v. *Lewis*, 19 How. 280 ; *Lenox* v. *Reed*, 12 Kansas, 223 ; *Merritt* v. *Phenix*, 48 Alabama, 87; *Goodenow* v. *Ewer*, 16 California, 961 ; *S. C.* 76 Am. Dec. 540 ; *Boogs* v. *Hargrave*, 16 California, 560 ; *Noyes* v. *Hall*, 97 U. S. 34.

*Mr. James G. Day*, (with whom was *Mr. William Phillips* on the brief,) for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

No complaint is made of the interlocutory decree adjudging the deeds to be mortgages, and that John Lyle, on or about January 1, 1881, agreed to pay for the lands the sum of $21,600.

The errors assigned question the action of the court in over-ruling exceptions to the master's report in respect of various particulars forming the basis of the amount found due, and to the finding that there was no settlement between the parties January 27, 1880; in approving the report as a whole; in finding that anything was due; in holding that complainants were entitled to a vendor's lien; in decreeing a sale; and in refusing to require George Lyle to be made a party to the action.

The deed of Rhinehart to John Lyle was dated March 28, 1878, and those of Mr. and Mrs. Shropshire, March 20, 1878, and May 1, 1878, respectively. The mortgage of the German Savings Bank was assigned to Lyle, May 2, 1879. The purchase by Lyle for $21,600 was made on or about January 1, 1881. This, therefore, is not the case of a conveyance presently made in consideration of the promise to pay the stipulated price, but of a sale of the equity of redemption, and the bill is in effect one to enforce payment of the difference between the total purchase price and the amount which it would have been necessary for the vendors to pay in order to redeem from the mortgages, if they had not sold.

The transaction took the shape of a purchase for a specified sum to be paid within a reasonable time, as no time for payment was definitely fixed, and presumably as soon as the indebtedness to the vendee could be ascertained and applied. The decree is for the balance of the purchase money alone, although under the circumstances an accounting was necessary in arriving at that balance.

The courts of the United States enforce grantor's and vendor's liens if in harmony with the jurisprudence of the State in which the action is brought, and the principle upon which such a lien rests has been held to be that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration. *Chil-*

*ton* v. *Braiden's Administratrix,* 2 Black, 458; Story's Eq.
Jur. § 1219.

Although there is some contrariety of expression, the doc-
trine of a vendor's lien arising by implication seems to have
been generally recognized in the State of Iowa.

In *Porter* v. *City of Dubuque,* 20 Iowa, 440, 442, the Su-
preme Court said: "The right to a lien in favor of a vendor
upon the real estate sold to a vendee is not based upon con-
tract; nor is it properly an equitable mortgage; neither can it
be regarded as a trust resulting to the vendor by reason of the
vendee holding the estate with the purchase money unpaid.
It is a simple equity raised and administered by courts of chan-
cery. It is not measured by any fixed rules, nor does it depend
upon any particular fact or facts. Each case rests upon its
own peculiar circumstances, and the vendor's lien is given or
denied according to its rightfulness and equity, in the judg-
ment of the court, upon the facts developed in the particular
case." It was stated, however, that whether the doctrine
should obtain in Iowa might be regarded as still an open ques-
tion, although it had been declared in *Pierson* v. *David,* 1
Iowa, 23, that the lien was firmly established. This case is
cited with approbation in *Johnson* v. *McGrew,* 42 Iowa, 555,
560, but it is added that whatever might be the view of the
question under the general doctrines of equity, there could be
no doubt respecting it under the provisions of the statute, and
reference is then made to sections 3671 and 3672 of the Iowa
Revision of 1860, which were sections 2094 and 2095 of the
Code of 1851. These sections provided that the vendor of real
estate, when all or part of the purchase money remained unpaid
after the day fixed for the payment, might file his petition
asking the court to require the purchaser to perform his con-
tract or to foreclose and sell his interest in the property, and
that the vendee should in such case, for the purpose of fore-
closure, be treated as a mortgagor of the property purchased,
and his rights be foreclosed in a similar manner. And it was
held that the sections applied as well where a deed had been
made as where it had not.

In *McDole* v. *Purdy,* 23 Iowa, 277, a vendor's lien was

allowed and enforced for a deficiency in value of lands taken in exchange, on account of the false representations of the other party; and to the same purport see *Brown* v. *Byam*, 65 Iowa, 374.

In *Huff* v. *Olmstead*, 67 Iowa, 598, the plaintiff conveyed to the defendant, in consideration of a partial cash payment and a promise by defendant to execute a mortgage back to secure the payment of the balance of the purchase money, unless he should sooner convey to plaintiff a good title to certain other lands in payment of the balance. Defendant did not convey the other lands, but he executed a mortgage and had it placed on record, differing in its terms, however, from the one agreed on. The plaintiff did not accept the mortgage, and it was held that he had a vendor's lien on the land conveyed to the defendant.

In *Devin* v. *Eagleson*, 79 Iowa, 269, where land had been purchased and partly paid for and had passed into the possession of the purchaser under an agreement that he would as soon as possible execute a mortgage thereon to the vendor to secure the residue of the purchase money, and the mortgage was prepared but not executed, it was decided that the vendor had a lien, according to the terms of the prepared mortgage, for the residue of the purchase price, and that the agreement to execute the mortgage was excepted from the statute of frauds by section 3665 of the code. In that case, the language above given from *Porter* v. *City of Dubuque*, as to the character of a vendor's lien, was quoted, though it was stated that plaintiff's lien was not such a lien, but one based upon a contract which a court of equity would enforce.

Sections 2094 and 2095 of the code of 1851 were carried forward into the code of 1873, but changed to cases where the vendor had " given a bond or other writing to convey," and section 1940 was enacted, which provided : " No vendor's lien for unpaid purchase money shall be recognized or enforced in any court of law or equity after a conveyance by the vendee, unless such lien is reserved by conveyance, mortgage or other instrument duly acknowledged and recorded, or unless such conveyance by the vendee is made after suit brought by

the vendor, his executor or assigns to enforce such lien." McClain's Ann. Code, (1888,) § 3111, p. 776.

Under this section it has been decided that, after the execution of a conveyance by the vendee, the lien ceases to exist, even though the grantee knew that the purchase money had not been paid. This is because the grantee has the right to assume that a vendor's lien as against him is waived; *Cutler* v. *Ammon*, 65 Iowa, 281, 283; *Prouty* v. *Clark*, 73 Iowa, 55; *Rotch* v. *Hussey*, 52 Iowa, 694; a presumption which cannot be indulged in where suit to enforce such lien is pending.

It is argued that the second branch of the section should be construed to mean that no vendor's lien shall be recognized or enforced after a conveyance, not only unless the lien is reserved, but also unless the conveyance is made after suit brought. It appears to us that this would disregard both language and obvious intention, and that where the conveyance is after suit brought the grantee takes subject to the maintenance of the lien.

Section 2628 of the code provides: "When a petition has been filed affecting real estate, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title, if the real estate affected be situated in the county where the petition is filed." 2 McClain's Ann. Code, § 3834, p. 1037.

The Circuit Court held that, as the petition in this case was filed February 26, 1883, in the county wherein the land was situated, and as the conveyance to George Lyle was made March 1, 1883, that conveyance did not affect the rights and equities of complainants; that it was the filing of the petition and not service of notice that created notice to third parties of the pendency of the action; and that even though there was a verbal contract in regard to the alleged purchase by George Lyle, made in December, 1882, yet that did not defeat a vendor's lien under section 1940 of the code. These conclusions we understand to be in accord with the decisions of the Supreme Court of Iowa. *Noyes* v. *Kramer*, 54 Iowa, 22; *Haverly* v. *Alcott*, 57 Iowa, 171.

It is said that this cannot be so, because the effect of *lis pendens* is merely to give constructive notice to any purchaser after the filing of the petition, and that if actual notice would not protect ·the vendor's lien, then, *a fortiori*, a constructive notice would not. But the notice given by filing the petition · is notice of the assertion of the lien and not merely of the fact that the purchase money has not been paid. The reservation of the lien by recorded instrument or ·its assertion by suit for its enforcement alike avoid the objection that it is a ·secret lien and prevent the acquisition of superior equities by third parties.

Appellant further insists that no suit can be held to be "brought," under section 1940, although the petition be previously filed, until the delivery of the process notice to the sheriff, with intent that it be served immediately, and that this (or this and service) alone· constitutes the commencement of the action, (Code §§ 2599, 2532;) that the first publication of notice of suit in this case was· not until March 22, 1883, and the publication was not completed until April 12, 1883,· (§§ 2619, 2620;) and that hence the conveyance to George Lyle had priority. Section 2532 relates simply to the bar of the statute of limitations, and section 2599 to the general rule · in respect of the manner of commencing actions; but, as already said, it is the filing of the petition, and not the delivery or service of process, that creates notice to third parties of the pendency of the action, and prevents them from acquiring an interest in the subject-matter thereof as against the lien so asserted.·

Undoubtedly, a lien of the character we are considering may be defeated if the grantor or vendor do any act manifesting an intention not to·rely on the land for security; but this must be an act substantially inconsistent with the continued existence of the lien, and cannot be inferred from the mere fact that the parties may not have contemplated the·assertion of the lien in the first instance. We find no sufficient evidence of a waiver here, and we do not regard the lapse of time between the surrender of possession in January, 1881, upon the purchase being made, and the filing of the bill in Feb-

ruary, 1883, as justifying a conclusion to that effect. The position is also taken that the remedy at law must first be exhausted or shown not to exist before a bill in equity can be filed to enforce such a lien. But our attention has been called to no decision by the courts of Iowa laying down that rule, and although we are aware that it obtains in some jurisdictions, and under some circumstances, it is inapplicable here, and need not be discussed as an independent proposition.

We are of opinion, in view of all the facts and circumstances disclosed by the record, and of the concession that the deeds were mortgages and that John Lyle agreed, on January 1, 1881, to pay the Shropshires $21,600 for the land, subject, of course, to the reduction of that amount by the indebtedness of the Shropshires to him, complainants were entitled to maintain a lien upon the property for the balance due them, which the conveyance to George Lyle could not in itself destroy.

In this connection it should be observed further that George Lyle had not paid the entire alleged consideration for the land before the bill was filed. The evidence of George Lyle and his grandfather is in many particulars directly in conflict. George testified that he made a verbal contract for the purchase of the farm, about December 1, 1882, for $22,000, which he paid in cash; that he traded for it six hundred and forty acres of land in Union County, Iowa, at $30 per acre, and $3800 in cash. This would be $23,000. He also said that he gave a note of $1600 for the stock on the place. John testified that George turned over to him on the purchase price sale notes to the amount of about $4000, and gave his note for $6000, and that a half section in Union County was part of the consideration, and was to be deeded as he might direct; that the agreed price for the three hundred and twenty acres was $8000. The deed for this land conveyed three hundred and twenty acres for the expressed consideration of $8000, and bore date September 20, 1883. Payments made after this bill was filed were made by George Lyle in his own wrong, so far as complainants' rights were concerned, and treating the doctrine that all the purchase money must be

paid before notice of a prior lien, in order that a subsequent purchaser may be protected, as so far qualified that protection may be accorded for the amount actually paid before notice, (*Kitteridge* v. *Chapman*, 36 Iowa, 348,) it is quite apparent that George Lyle was not deprived against his will of that protection by the relief awarded.

The motion to dismiss the suit for defect of parties was properly overruled. By equity rule 47 it is provided that in all cases where it shall appear to the court that persons who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction as to the parties before it, the court may in its discretion proceed in the cause without making such persons parties, and in such case the decree shall be without prejudice to the rights of the absent parties. When this bill was filed the conveyance to George Lyle had not been made. What rights may have accrued to him prior to that date are not affected by the decree. The suit was removed into the Circuit Court of the United States by the defendant John Lyle, and having done that, he then contended that the court had no jurisdiction, because George Lyle was an indispensable party defendant, and he was a citizen of the same State as complainants. We do not think this will do. If George Lyle, who was fully aware of the pendency of the suit and gave his testimony therein, desired to set up equities which he claimed arose from the payment of part of the purchase price of the property before the suit was brought, he might, as pointed out by the Circuit Court, have intervened in the cause, for the protection of his rights, without ousting the jurisdiction. This he did not do, and we are not prepared to hold the Circuit Court should be deprived of jurisdiction at the suggestion of the party who voluntarily invoked it.

Undoubtedly, George Lyle would have been a proper party to the proceeding, but we do not regard the case as one in which his interest in the subject-matter and in the relief sought was so bound up with John Lyle that his legal presence as a

party was an absolute necessity without which the court could not proceed. *Traders' Bank* v. *Campbell*, 14 Wall. 87, 95.

This brings us to the examination of the matters complained of in regard to the master's report. The rule in relation to the findings and conclusions of a master, concurred in by the Circuit Court, is that they are to be taken as presumptively correct, and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. *Crawford* v. *Neal*, 144 U. S. 585, 596; *Furrer* v. *Ferris*, 145 U. S. 132.

We have carefully examined the evidence, and are satisfied that the findings of the master (including that rejecting the alleged settlement in January, 1880) ought not to be disturbed under a proper application of the rule just stated, except in one particular, in respect of which we hold a serious and important error has been committed. The report of the master states certain items, amounting to $5778.80, as the "individual indebtedness" of A. C. Shropshire to John Lyle on January 1, 1881, including interest. In the summary of the account stated between the parties, the report puts the balance due in the alternative. If the $5778.80 were rejected as a credit in Lyle's favor, the balance found was $7807.31 and if it were allowed, the balance was $2028.51. The Circuit Court entered a decree for the larger amount, with interest thereon. We cannot concur in this conclusion. Lyle's advances were made for the benefit of both the Shropshires. The husband had charge of the farm, and the stock that was procured from time to time and placed upon it through the business transacted with Lyle was for the benefit of both. Lyle gave credit to the farm and its operations, and not to A. C. Shropshire, as contradistinguished from his wife. Some of the credits allowed to the Shropshires in the $4894.44 appear to have been realized out of items thrown into the alleged individual indebtedness of A. C. Shropshire. The course of dealing between the parties, their correspondence, the whole evidence taken together, seem to us wholly inconsistent with the idea that Lyle was trusting A. C. Shropshire to the extent indicated, and looked to

him for repayment, or that Shropshire and his wife so understood. The indebtedness was joint and not several. There is, however, included in this amount of $5778.80 a note of $1000 of Augustus and Alexander C. Shropshire, with interest from December 1, 1877, to January 1, 1881, amounting to $327.83, which should be excluded as individual indebtedness of A. C. Shropshire and not properly chargeable in this account. All equitable considerations are open in such a suit, and we think that the equities require that John Lyle should receive an additional credit of $4450.97. The balance due upon the account stated, corrected in this particular, would be $3356.34.

*The decree is reversed and the cause remanded, with a direction to enter a decree for the amount of $3356.34 with interest from January 1, 1881.*