## NEGLIGENCE IN PASSING AROUND THE END OF A STREET CAR.

[Superior Court of Cincinnati, General Term.]

THE CINCINNATI STREET RAILWAY CO. v. LANDON MCBEE.

Decided, February 9, 1905.

*Bill of Exceptions—Not Rendered Invalid—By Failure to Endorse Extension of Time Within the Five Day Period, When—Negligence —Rights of Pedestrians in Crossing Street Car Tracks—Doctrine of the Snell Case Applied.*

1. Should a judge through mistake or forgetfulness fail, within the initial period of five days, to make his endorsement upon a bill of exceptions of the extension of the time for the signing thereof, the subsequent endorsement of the extension thus granted and signing of the bill within the extended period would be in accordance with law.
2. Contributory negligence should not be imputed to one who, in alighting from an electric car at a regular stopping place, passed around the rear end, and was struck by a rapidly moving car running in the opposite direction on the parallel track, and which he could neither see nor hear by reason of the obstruction caused by the car upon which he had been a passenger, in the absence of clear proof of proper warning by the agents of the operating company.

HOSEA, J.; FERRIS, J., and HOFFHEIMER, J., concur.

The action to strike from the files the bill of exceptions was considered at a previous sitting of the general term, and upon re-consideration we perceive no reason to recede from the views then expressed. The bill of exceptions being placed in the hands of the trial judge in proper time, on October 20, 1903, his jurisdiction over it was complete. The initial period of five days allowed for his action would have expired on October 25, excepting for the operation of Section 4951, Revised Statutes, under which the period expired on October 26th; and the expiration of "ten days beyond the expiration of the period aforesaid" expired with November 5, on which latter day the judge signed the bill.

It is claimed, however, that, as the endorsement of the extension was dated November 5, the extension must be taken to have been made on that day, but this does not necessarily follow.

*Omnia rite esse acta praesumnutur* is a maxim recognized from time immemorial as applying to the acts of public officers (*Downing* v. *Ruger*, 21 Wend., 178). The rule that "acts done which pre-suppose the existence of other acts to make them legally operative, are presumptive proof of the latter," was early adopted and has been repeatedly followed in Ohio (*Lessee of Ward* v. *Barrows*, 2 Ohio St., 242; *Lessee of Combs* v. *Lane*, 4 Ohio St., 612; *Reynolds* v. *Schweinefus*, 27 Ohio St., 311; *Knox County* v. *Bank*, 147 U. S., 141).

A practical application of this rule has been made to bills of exceptions with the holding that "the record imports verity and can not be impeached by evidence *aliunde* tending to show that the requirements of the statutes were not complied with" (*Huddleston* v. *Hendricks*, 49 Ohio St., 297; *Findlay Brewing Co.* v. *Brown*, 62 Ohio St., 202; *Felch, Assignee,* v. *Hodgman*, 62 Ohio St., 312). In the latter case the rule is stated with added force as follows:

"The ordinary rule is that when any judicial or official act is shown to have been done in a manner substantially regular, it is presumed that formal requisites affecting its validity were complied with."

In the present case the judge endorsed the extension upon the bill and signed the bill within the extended period—all in accordance with the law. The date of the endorsement was not required by statute, and consequently was not necessary (*Felch* v. *Hodgman, supra*).

"When the question is not of power, but of the manner in which a supposed act was done, the presumption is in favor of the officer having performed his duty in a legal and sufficient manner. * * * When a statute requires an act to be done, and gives no direction as to the mode of performance, and proceedings are had in the direction of performance, the duty will be presumed to have been rightly performed until the contrary is made to appear" (*Reynolds* v. *Schweinefus, supra,* pages 320 and 321).

It may be added, that, even if the court by mistake or forget-fulness neglected to make the endorsement of the extension within the first five days, his subsequent endorsement prior to signing the bill must be regarded as within the general power of correction vested in the courts of Ohio by Section 5114, Revised Statutes, and as curing the defect    (*Railway* v. *Bailey*, 70 O. S., 88).

The trial errors complained of by the plaintiff in error here mainly hinged upon the question, whether the verdict and judg-ment in the court below were against the weight of the evidence and contrary to law.    The facts in brief, were that McBee, a passenger on a northbound car, gave the signal to stop at an intersecting street, and the car had almost stopped at the cross-ing when he stepped off the east side of the rear platform where he had been standing, and proceeded to cross westwardly behind his car over the tracks to the opposite side of the street; but, just as he stepped beyond the track over which he had come to the adjoining parallel track, he was struck and severely in-jured by a southbound car coming rapidly upon the latter track.

The case upon the facts is substantially identical with that of *Street Railway* v. *Snell*, 54 O. S., 197, in which the trial court is reversed for directing a verdict.    Snell had alighted from an eastbound car when it had slackened its speed for him as it approached a crossing; he got off at the south side and passed behind the car northwardly; and, as he neared the south rail of the west bound track was struck by a car coming west. The court says:

"At the same time while crossing he looked both east and west along the track, but the precise point from which he looked is not clear."

The case is also substantially similar upon its facts to that of *Cleveland Electric Railway Company* v. *Wadsworth*, 1 C. C.—N. S., 483, in which the trial judge is reversed because he did *not* direct a verdict.    As in the Snell case the passenger got off as the car slowed up at a crossing, going eastward; passed to the rear of his car northwardly across the street; and was about to step upon the south rail of the adjoining trackway when he saw

and was struck by a westbound car whose headlight was brightly burning (it being at night).

The latter case was affirmed without report by the Supreme Court in 70 O. S., 432; so that our inquiry as to the governing rule should be narrowed to a comparison of these two cases which indicate the extremes between which it lies. But the flexible character of the rule is shown by the contrary results of these two cases in this, namely: the rule as announced in the fourth syllabus of the Snell case is, that where the question of contributory negligence "depends upon facts from which different minds might draw different conclusions," it is for the jury. The action in the Snell case was consistent with this principle because the court, taking a different view from that of the trial judge, upon the facts, gave effect to the principle by reversing the action of the judge below and sending the case to a jury. But in the Wadsworth case the difference of view of judges upon the facts seems to have produced an opposite result.

The contrary character of these results justifies, if it does not require, a re-examination of the legal relations involved in such cases.

It is manifestly the purpose of the Supreme Court, in the Snell case, to formulate an approximation to governing rules consistent with the primary holding that the rights of a street railway company operating cars over the streets of a municipality are neither higher nor different in kind from those of the ordinary citizen. And it is very essential to keep this in mind; for, in this respect, the duties and obligations relating to steam railroads rest upon quite a different legal basis, and precedents and rules drawn from such cases do not ordinarily apply.

The rule of the Snell case is, that those who pass across a street railway at a street crossing are held to the exercise of ordinary care only—"such care as might reasonably be expected of persons of ordinary prudence." Moreover, they are not required to anticipate negligence on the part of those operating cars; and while they should use their faculties of perception for their own protection, yet, "it is not necessarily negligent to fail to look in both directions for the approach of a car, but this depends upon the circumstances."

In view of the facts of the Snell case which called forth these suggestions, and of the character of the court's action thereon, the meaning of the above holding seems to be that while a party is required to use his faculties of seeing and hearing reasonably to avoid danger, yet the circumstances may be such that, through no fault of his own, he might not by so using them perceive danger in time to avoid it.

In dealing with the facts in this class of cases it must be remembered that a party crossing the street behind a street car, is, while at the precise place where his faculties should be exercised, cut off by the presence and position of the car behind which he is passing, from seeing—and to a great extent from hearing—an approaching car on the parallel track. When the party injured is a passenger, just alighted from a car at a crossing, it is at least a circumstance to be considered, whether under his right to presume that the company will exercise due care to protect him from danger from their own cars, their failure to warn him at a place where they themselves have interposed an obstacle to the exercise of his own faculties of observation, is not such an assurance of safety as may excuse him.

On this point the opinion in the Snell case speaks with no uncertain sound.   The court say (page 206):

"In this case there was a total disregard of plaintiff's rights— a clear case of gross, culpable negligence. The company owed to the passenger who had just alighted the duty of permitting him to cross from its car to the opposite side of the street without peril of his life or limb from the acts of the company; instead of which it sent its car down the grade at a breakneck speed without giving any warning or taking any pains to avoid running him down."

Let us see what the conditions in such a case really are. The space between adjacent trackways in this city is about three and a half feet. As a car projects laterally beyond its trackway something over a foot, the space between cars in passing is about twelve inches. To a person crossing behind a car the view ahead upon the other track is confined to a very few feet until he has passed beyond the actual path of travel of his car—

that is, the view is cut off by the car from which he has just alighted. But, as a man walking covers about three feet at a step, a single step beyond the outer line of the standing car carries him into the path of danger of the approaching car on the next track. The significance of these facts appears when we consider the results of speed of cars in the same direction.

A car traveling at ten miles per hour covers about fifteen feet in one second of time; at fifteen miles per hour, twenty-two feet in one second; and at twenty miles per hour about twenty-nine feet in one second. While a man is taking one step of three feet therefore the approaching car is traveling fifteen, twenty-two, or twenty-nine feet in the same time, according to the speed suggested. It will be obvious therefore that there is little chance for safety for one crossing a street behind a car at a crossing as against a car coming in the opposite direction upon an adjacent trackway at a speed of ten to twenty miles an hour, unless the pedestrian stops still behind the standing car and cranes his neck forward to see beyond it, being careful not to place his head beyond the neutral space of twelve inches between the paths of passing cars at the risk of losing it.

But the Snell case repudiates the doctrine requiring a pedestrian to stop, look and listen, before crossing an electric railway, upon the theory that the right of operating cars in the streets is subservient to the equal rights of the public for passage along the street. The figure used for illustration by the court evidently intended to show its impracticability, is that of a man "sitting on a bank waiting for a stream to run by", and they say that the rule for street cars is the same as for ordinary vehicles, and add (page 209) that one crossing a street can not be required "to extend his observation beyond that distance within which a car proceeding at a customary and reasonably safe speed would threaten his safety."

It seems to us a fair and logical deduction therefore from the observations and reasoning of the Snell case that because of the peculiar danger to which a passenger alighting from a street car is exposed in passing behind the car to cross over the street,

the measure of care required of the operating company is to be greatly enlarged, and indeed it may fairly owe him the degree of care due a passenger until he is out of the range of peril from the cars. It also follows that as the measure of care is enlarged for the company it is diminished for the passenger to the extent that he is by force of circumstances obliged to rely upon the company for protection by ample warnings and slackened speed of cars, because the company has placed an obstacle in the way whereby he is prevented from exercising his faculties as he might otherwise do for his own protection.

In the case at bar the speed of the oncoming car is variously estimated. The plaintiff avers that he was looking and listening as he passed to the rear of his own car and saw the approaching car at a distance of twelve or fourteen feet, but coming so rapidly he could not avoid collision. The case at bar strikingly illustrates the conditions to which we have referred and which are inherent in this class of cases. The testimony of plaintiff—corroborated to some extent, at least, by others—is that he did use his faculties for seeing and hearing, but he heard no signal nor warning of any kind, and could not see along the southbound track because of the presence of the car on which he had been riding, until he passed it, and then the down car came upon him so suddenly he could not escape. His language describes the situation with accuracy. He says he "went forward looking and listening"—"listening for the gong"—"listening for trouble sure, because there is generally trouble in lines like that"—"When I first seen the other car coming I was just stepping out, looking and stepping, and pressing forward."

Asked where he saw the car coming south, he says: "No, you can't see it on the same track the other car is on"; "you can't see it"; "it is impossible to see it until you pass" (meaning evidently, that from the track over which he had come he could not see the other car because of the presence of his car). And again: "I could have got out of the way if it wasn't going so swift."

There was, as might have been expected in a case three years old, more or less variation in testimony in detail as to the speed

of the southbound car; whether and just where a gong was sounded, if at all; whether the conductor gave any verbal warning, and when, if at all, etc.; but the preponderance of the testimony, oral and circumstantial, showed that the down car came at a high speed.

The motorman, who saw McBee about a car length away, says he instantly turned on sand to the tracks and operated the reverse. All this occurred north of the north crossing at Flint street. The consensus of testimony was that when the car came to a stop it was entirely over and at least ten feet beyond the south crossing of Flint street, and the distance between the crossings is shown to be fifty-one feet and a fraction. It had run, therefore, on a sanded track on an up grade and reversed, a distance of fifty-one feet between the crossings, plus ten feet over, plus a car length of about twenty-five feet—a total of about eighty-six feet, plus whatever distance the car was above the north crossing, say ninety feet in all. There was no snow on the tracks, but the weather was cold, and as one or two witnesses expressed it, "drizzling, but not raining." It is manifest, therefore, that the car must have been running at an unusually high speed; and if it was, as stated by McBee, only fourteen feet away when he reached the neutral twelve-inch space between the trackways, when he could see beyond his own car, it was upon him in less than a second of time, perhaps less than half a second of time, and gave him no chance to get out of the way by the exercise of any sort of care, ordinary or extraordinary.

The circuit court distinguishes the Wadsworth case from the Snell case on the ground that in the former the party injured had not his mind on his surroundings at the time of the injury, and hence did not use his faculties to avoid danger that he should have perceived. According to briefs of testimony in the opinion the court seems to have assumed that he was engrossed in other thoughts, and hence was negligent; whereas they say that the reverse was affirmed in the Snell case, because the plaintiff himself testified that he looked in both directions for an approaching car. By this test the case at bar falls distinctly within

the terms of the Snell case, and as distinctly without the terms of the Wadsworth case. But we are not satisfied with such a test. A man may be excused for not suspecting danger which he can neither see nor hear because of the obstacle of the car from which he has just alighted, and because he relies and has a right to rely upon the presumption of due care on the part of the company proportioned to the circumstances, and also upon the absence of any direct warning from the conductor immediately charged with responsibility toward him as a passenger.

We think that contributory negligence should not be imputed to one injured under such circumstances as appear in this case—where palpable and gross negligence is shown on the part of the operating company. As the conditions are thus created by the nature of street car service and are inherent in the business, they can only be remedied by extra care on the part of the operating company in being held to an iron clad rule of utmost care in passing cars at street crossings and of ample warning to passengers alighting.

We find no error in the charge of the court, and from a careful consideration of the testimony we find no reason for disturbing the verdict. The charge of the court was fair, impartial and just, and we do not think the jury were in any way misled. The judgment, therefore, must be affirmed, and it is so ordered.

*Outcalt & Foraker,* for plaintiff in error.

*Thomas L. Michie,* for defendant in error.