# WELCH & COMPANY

### *v.*

# CENTRAL SAN CRISTOBAL, INC.

## ON PETITION OF GALLARDO.

San Juan, Equity, No. 940.

RENTS PRIOR TO RECEIVERSHIP.

Receivership—Rental Pending.

    1. A receiver cannot use the property of another without paying rent for the time he so uses it.

Same—Prior Lease.

    2. A receivership fixes a different status, and the receiver is not liable for such part of the contract as has not been performed during the receivership, unless there is a lien fixed by law.

Federal Court—Local Liens.

    3. The Federal court will enforce a lien created by a local law where it otherwise has jurisdiction.

NOTE.—As to question of liability for rent of premises occupied by receiver, see note in 59 L.R.A. 673.

Welch & Co. v. Central San Cristobal.

Same—Receivership.

4. Although a receiver has the option to cancel an onerous con-
tract, he must, when he adopts it, hold it subject to all valid ex-
isting liens.

Lien—Civil Law.

5. The word "lien" is not known to the civil law. The Porto
Rican law provides for credits graduated and paid in a manner
specified in Civil Code, §§ 1822 and 1823 as to personal property,
and § 1824 as to real property.

Civil Code—Privileged Credits.

6. The Civil Code, §§ 1823, 1824, relates to the privileged credits
or preferences given by law to certain creditors because of the pre-
sumption that such is the intention of the parties. The former sec-
tion refers to personalty, the latter to realty. The priorities fixed
by § 1825 are ordinary privileged credits, and come after the others.

Lien—Preference.

7. In American jurisprudence a lien is a right in regard to particu-
lar property to obtain satisfaction of a claim by force of sale. The
civil law preference is the advantage, primacy, or priority that is
given to one competing creditor over another. Lien and preference
are practically the same thing.

Lien—Louisiana Law.

8. In Louisiana the landlord's lien gives a pledge on personal
property on the premises. A lessor has a double right,—a right of
pledge and detention, and a privilege or lien proper existing after
the property leaves his possession.

Rent—Proceeds of Property.

9. A lien created by the local law is to be paid out of the pro-
ceeds of certain property, and rent can be allowed preference only
to the extent of the proceeds realized from that property.

Rent—Expenses of Cultivation.

10. The provisions of the Civil Code, § 1823, for deducting ex-
penses of cultivation from the rent, cannot be applied in a case when
there is no evidence adduced of such expenses.

Rent—Severance of Crop.

11. Under the local law the lien for rent is inchoate until the re-
moval of the crop, but becomes fixed when that is done.

Rent—Sublease.

12. Section 1823 of the Civil Code fairly applies to a sublease where
the fruits of the property can be traced.

Welch & Co. v. Central San Cristobal.

Liens—Priorities.
  13. A declaration of liens upon property in a receiver's hands does not fix its priority relative to other liens. That is a separate subject. for investigation and declaration.

Opinion filed July 18, 1914.

---

*Mr. H. G. Molina* for Arturo Gallardo et al.

*Mr. Paul Charlton* for Gustavo Preston.

*Messrs. Savage & Francis* for Juan Mendoza et al.

*Mr. Chas. Hartzell* for the receiver.

HAMILTON, Judge, delivered the following opinion:

This matter comes up upon exceptions to the report of Special Master. Brown, in which he found that the petitioners had a preference or lien upon the immovables or fruits existing upon the leashold premises, described to the amount of $2,-138.89 at the time the premises passed into the possession of the receiver, and provides for enforcing the lien in this proceeding. There is little dispute as to the facts. There was a lease by petitioner to N. F. Prescott January 8, 1910, of five tracts of land in the district of Naguabo for a period of ten years at an annual rental of $5,500, to be paid at the end of the respective quarters. Prescott, being duly authorized by the lease, assigned it on or before February 18, 1911, to the Central San Cristobal, Inc. This central held possession of the property until August 16, 1913, when Alexander R. O'Neil, as receiver in this cause, entered into possession.

Welch & Co. v. Central San Cristobal.

1. The receiver elected to retain possession of the property, and no question is raised as to his liability for rent during the receivership. If he has not paid this rental, he should do so. A receiver cannot use property without paying for the use of it.

The question is not so easily decided as to unpaid rents accruing prior to the receivership, and they are claimed on several grounds.

2. It is set up that a lease is a continuous or executory contract, and as such the receiver cannot affirm it in part and deny it in part. This point, however, has been decided otherwise by this court in the matter of exceptions to the report of the master as to the claim of the Fajardo Development Company against the receiver of the San Cristobal Central. It is there held that receivership fixes a different status, and that the receiver is not liable for such part of a contract as has not been performed during the receivership, unless there is some lien fixed by law.

3. The question therefore arises whether there is any lien given by law in the case of a lease such as is set out in the pleadings in this case. The master reports that there is a lien, and that it is applicable to the facts of this case. There is no question that a lien created by a local law will be recognized by the Federal courts and enforced in proper cases. This is but an instance of a rule often applied. Nothing is more common than for a Federal court to enforce a mortgage upon a railroad or other property. Foster, Fed. Pr. § 145. This applies to a lien established by a state statute (Ibid. § 82), such as a mechanics' lien (Idaho & O. Land Improv. Co. v. Bradbury, 132 U. S. 509, 33 L. ed. 433, 10 Sup. Ct. Rep. 177), or

Welch & Co. v. Central San Cristobal.

a vendor's lien (Fisher v. Shropshire, 147 U. S. 133, 37 L. ed. 109, 13 Sup. Ct. Rep. 201).

All valid liens created by local law are recognized by the Federal court, and, in a proper case as to citizenship, will be enforced there.

4. This is not only true as between persons, but in case of receivership also. It is true that the receiver has the option to adopt contracts or to repudiate onerous pre-existing contracts, as has been held by this court in a number of instances. But where a contract has been adopted, any lien that goes with the contract as security for the contract is itself adopted. A receiver's possession is subject to all valid existing liens upon the property at the time of his appointment, and it is his duty to preserve and protect such liens. High, Receivers, pp. 159–161. To the same effect is Beach on Receivers, p. 318. The receiver is an officer of the court, and the fund or property in his hands in *in custodia legis* for the benefit of whoever may finally establish title thereto. High, Receivers, p. 3.

5. The principal question in this case therefore is, What lien, if any, is created by the local law? The civil law does not mention the word "lien," and the matter therefore requires some consideration.

The fourth book of the Civil Code relates to obligations and contracts, and, after considering these in successive titles, we find title XVII., relating to "Concurrence and preference of creditors." Under this title, after general provisions which relate largely to bankrupt proceedings, comes chap. 2, "Classification of credits." It is provided (§ 1822) : "Credits shall be classified for their graduation and payment in the order and manner specified in this chapter," and (§ 1823) : "With regard

VII. Porto Rico—14.

to specified personal property of the debtor, the following are preferred:

"(1) Credits for the construction, repair, preservation, or for the amount of the sale of personal property which may be in the possession of the debtor to the extent of the value of the same.

"(2) Those secured by a pledge which may be in the possession of the creditor, with regard to the thing pledged and to the extent of its value.

"(3) Those guaranteed by a security of goods or securities constituted in a public or commercial establishment with regard to the security and for the value of the same.

"(4) Credits for transportation, with regard to the goods transported, for the amount of said transportation, expenses and rates of carriage and preservation, until the time of the delivery and for a period of thirty days afterwards.

"(5) Expenses of boarding with regard to the personal property of the debtor remaining in inns.

"(6) Credits for seeds and expenses of cultivation and harvesting, advanced to the debtor, with regard to the fruits of the crops to which they were applied.

"(7) Credits for rents and leases for one year with regard to the personal property of the lessee existing on the estate leased and on the fruits thereof.

"If the personal property, with regard to which the preference is allowed, has been surreptitiously removed, the creditor may claim it from the person who has the same, within the term of thirty days counted from the time it was so removed."

This section establishes a priority of payment in a certain order mentioned by it, but these priorities relate only to per-

Welch & Co. v. Central San Cristobal.

sonal property, including, however, the crops so far as relate to the claim for seed and expenses of cultivation and harvesting, and after that for rents for one year. The section does not apply to real property. Preferences with regard to realty are defined in § 1824, which places before mortgages duly recorded only taxes for three years, agricultural advances, and insurance premiums for two years. Whatever may be determined in this case as to these exceptions is not to be considered as affecting in any degree the security of the mortgage on the property. It will apply only to the fund in the hands of the receiver.

6. The Porto Rican Civil Code is in many instances taken bodily from the Spanish Civil Code. This is true as to § 1823, which represents § 1922 of the Spanish Code. Light is thrown upon its meaning by the commentator Manresa. 12 Commentaries, pp. 679, 685, 686. He denominates the preferences found in §§ 1823, 1824, relating to personalty and realty respectively, as "Special privileged credits," and those found in § 1825 as "Ordinary privileged credits" (p. 696). He considers that the privilege in question belongs to the creditor because of the presumption that such is the intention of the parties to the contract, and more specifically as to the crops, because these fruits are a consequence, if not a part, of the life of the leased property.

7. Lien, as used in the American jurisprudence, and more particularly as to landlord's lien, is a right as regards particular property to obtain satisfaction of a claim by the forced sale of such property, even as against third persons obtaining an interest in the property after the inception of the lien. Tiffany, Land. & T. § 320. The Civil Code preference is defined in Escriche's Dictionary as, "The advantage, primacy, or

priority that is given to one competitor over another." It will be seen, therefore, that such lien and preference are practically the same thing. Under both there are special proceedings, often defined separately in the statute, for the enforcement of the claim. This will be found in America in connection with any of the liens granted, and in Spain is described by Escriche in his Dictionary under the title, "Trials." The Spanish proceedings may not apply in Porto Rico on account of the adoption of a separate Code of Civil Procedure, but the lien or preference declared will be enforced by a court of equity. In the case of a receivership there is even less difficulty in molding the remedies to insure justice. A bill of intervention is the proper proceeding in which to adjudicate a lien and charge the property with it. Street, Fed. Eq. Pr. §§ 2655 and 2609. In the case at bar there was less formality, but the claimant has come in under the invitation of the court for the filing and proof of claims, and so the matter is before the court for all purposes.

8. That jurisprudence in general is agreed as to furnishing a lien or privilege to landlords is further shown by the Civil Code of Louisiana. This, in § 2705, gives the lessor a right of pledge upon the movables or personal property on the leasehold premises, defining further, in § 3217(3), as a debt so secured, "the rents of immovables and the wages of laborers employed in working the same, on the crops of the year, and on the furniture which is found in the house let, or on the farm, and on everything which serves to the working of the farm." A pledge is of a higher nature than a privilege, inasmuch as the former 'carries a right of detention, but is nevertheless more precarious, inasmuch as it depends upon possession. A lessor under the Louisiana law was therefore given a double right,

Welch & Co. v. Central San Cristobal.

a right of pledge and detention, and a privilege or lien proper which he can enforce after the property has left his possession. O'Kelly v. Ferguson, 49 La. Ann. 1230, 1245, 22 So. 783. This privilege follows not only the property, but its proceeds.

9. The finding of the master is that the claim is allowed at the contract rate. The rightfulness of this view is not clear. So far as the rental contract is concerned, it is, of course, a just claim, and should be paid out of any appropriate funds; but it is not protected by preference or lien except upon the proceeds of the crop from the land so rented. Any balance due beyond the amount so realized is not entitled to the lien above discussed, and can only be allowed as a general credit against the defendant company. The master's report does not draw this distinction, and for the facts we have to rely upon a supplementary statement made by the receiver by order of court at the time of the hearing of the exception to the master's report.

10. The point is raised that the preference allowed in § 1823 of the Civil Code is declared to be inferior to expenses of cultivation and harvesting; that these should be deducted, and that the lien should be fixed only upon the net proceeds. This point need not be considered inasmuch as neither the receiver nor anyone else has adduced evidence on the subject. The master allows a preference for a landlord's lien, and it was the duty of whoever is interested in opposing this lien to adduce evidence before the master to diminish the amount claimed. This has not been done, and so it is not necessary to say whether, if done, it would have been a proper deduction.

11. The limitation of this lien is to one year, and the amount claimed is within that period; indeed it is confined to less than

six months before the receivership. It is to be noted also that the lien so far as it relates to personalty would not be enforceable until the crops had been severed, which was, however, done by the receiver himself. Growing crops under the Civil Code, § 335, are realty. If there was an inchoate lien upon the crops while growing, as would be a proper construction of § 1823, it would mature and be enforceable whenever the crop was cut, and would follow the proceeds in the hands of the receiver when he converted the cane into sugar.

12. In this case it seems that part of the claim for rent on the part of Gallardo is made up of rents on a sublease made by him to other parties, but from whom the receiver has obtained money sufficient to pay the rent which the sublessees owe to the receiver. This seems to be covered by § 1454 of the Civil Code, which declares that the subtenant is bound to the original lessor, and § 1823 fairly applies to such a sublease when the fruits of the property are in specie, or their proceeds can be traced into the fund in hand.

13. It is to be observed that while, as a result of this opinion, a lien is fixed upon the crop proceeds of the land in question, there is no determination at this time of the relative priority of this lien as regards others also proved before the master. It is one thing to declare that a claim has a lien, and another to fix the priority of that lien in competition with other liens which may also be declared. That is a matter of separate consideration. It follows therefore that the report of Special Master Brown herein is confirmed.