CLARINDA HISCOCK v. MORANIA NORTON AND CHESTER CHILSON.

*Equitable lien on lands for enforcement of bargains affecting it.*

The doctrine of vendor's liens on realty rests on the postulate that it is not equitable to absorb another's wealth without recompense.

As between grantor and grantee an estate is bound for the unpaid purchase money, unless (1) there are arrangements between the parties which show that reliance is not placed on any unwritten claim against the land, or (2) such complications in their agreement that a court cannot define with certainty the present amount due, or identify the lien to be enforced.

A woman deeded the west half of a quarter section of land to her brother, and took back a lease of it, and at the same time the parties made an agreement whereby he was to build her a house

on the east half, and she was to let him and his wife occupy a portion of it during their natural lives and was also to let to him the whole quarter section for the term of her own natural life for a certain proportion of the crops. The conditions of the agreement were too indefinite to be estimated at a fixed sum. *Held* that the three transactions must be construed together, and that an equitable lien on the land for the fulfillment of their conditions was not enforceable.

Appeal from Jackson.    Submitted October 30.    Decided November 29.

BILL to set aside a deed or to enforce an equitable lien on the land granted.    Defendant Chilson appeals.

*Gibson & Parkinson* for complainant.

*John D. Conely* and *Alfred Lucking* for defendant Chilson. An equitable lien upon land cannot arise unless there has been a sale and conveyance of the land for money, 1 Hilliard on Mortgages, 670; *Sears v. Smith,* 2 Mich., 244; if the consideration is the vendee's agreement to do some collateral thing, the lien is waived, *Brawley v. Catron,* 8 Leigh, 522; *McKillip v. McKillip,* 8 Barb., 552; *Hare v. Van Deusen,* 32 Barb., 95; *Fisk v. Potter,* 2 Keyes, 72; *Patterson v. Edwards,* 7 Cushm. (Miss.), 67; *Parrott v. Sweetland,* 3 Myl. & Keen, 665; *McCandlish v. Keen,* 13 Gratt., 615; *Meigs v. Dimock,* 6 Conn., 458; *Arlin v. Brown,* 44 N. H., 102; *Buckland v. Pocknell,* 13 Sim., 406; the price must be definite and fixed, *Payne v. Avery,* 21 Mich., 524; *Campbell v. Campbell,* 21 Mich., 438; *Swain v. Cato,* 34 Tex., 395; 1 Jones on Mortgages, § 194; waiver of the lien may be implied from the terms of the instrument transferring the realty, *Smith v. City,* 27 La. Ann., 286.

GRAVES, J.    For several years before May 23, 1872, the complainant, a married woman, owned the northeast quarter of section fifteen, in the township of Sandstone, in Jackson county, and on that day she gave a deed of the west half to her brother, Amos Hicks, and received

back an instrument specifying that he leased the premises to her for the term of her natural life.    The deed expressed a consideration of $1500, and the lease one of $500.

April 11, 1873, and a little less than a year after this transaction, Amos Hicks died intestate, leaving a widow, Mercy Hicks, now Mercy DeForest, and as sole heirs at law eight brothers and sisters, including complainant, and one nephew.    Subsequently Mercy, the widow of Amos, and three of the heirs at law quitclaimed to complainant, and Solomon Hicks, another, obtained quitclaims from three of the remaining heirs, and then transferred his interest to his wife, Betsy Hicks, who shortly afterwards quitclaimed to their son-in-law, the defendant Chilson.

The remaining heir of Amos Hicks, the defendant Morania Norton, seems to have made no transfer.

Hence the complainant holds the widow's interest and the interest of four of the nine heirs, and Chilson holds the interest of four others, while the defendant Morania Norton retains the ninth.    At the time complainant deeded to her brother and received the lease back, and as part of the same transaction, they also entered into a written agreement in these terms:

"This Indenture, made this twenty-third day of May, one thousand eight hundred and seventy-two, between Clarinda Hiscock, of Mosherville, Michigan, of the first part, and Amos Hicks, of Ann Arbor, of the second part,

Witnesseth, That the party of the second part, agrees for himself, his administrators, and heirs, to build a dwelling house for the party of the first part, on the E. $\frac{1}{2}$, N. E. $\frac{1}{4}$ Sec. 15, T. 2 S., R. 2 W., Michigan, for the sum of fourteen hundred dollars, the receipt whereof is hereby acknowledged in the fee simple of a deed of the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, Sec. 15, T. 2 S., R. 2 W., Michigan, five years from the date thereof.    And the party of the first part, for herself and her heirs, agrees to and with the party of the second part that he may peaceably occupy a portion of said dwelling house and work and till the farm for the term of my natural life-time, upon conditions hereinafter stated; and in case of the death of the party of the second part, before the death

of his wife, she is to peaceably occupy a portion of said dwelling house during her natural life-time. The party of the first part agrees to let the farm—the N. E. ¼ of Sec. 15, T. 2 S., R. 2. W., Michigan—to the party of the second part, for the term of her natural lifetime, for one-third of all grain crops delivered in the half bushel, that are not fed to stock raised on the farm; also the hay and fodder, and one-third the avails of all stock raised that is sold in market. The party of the second part is to have his fire-wood and keep the farm in good repair, and farm and work the same in a good and work-manlike manner; the said parties agree to each pay one-half of all taxes—public—on said farm.

"In witness whereof, we have hereunto set our hands and seals the day and year aforesaid.

CLARINDA HISCOCK.<br>AMOS HICKS."

At his death Amos Hicks had done nothing under this agreement, and no one has done anything since. And it may be here noticed that when he found he was near his death he desired to reconvey to complainant, but the attempt was deferred until his strength and capacity were so impaired that the purpose could not be accomplished.

February 12, 1878, Mrs. Hiscock commenced this suit and constructed her bill with a double aspect.

The two theories are stated by her counsel as follows:

"First. That it was never complainant's intention to absolutely part with the title until Hicks should build the house for her as agreed upon; that the form of the several papers between them was due to the justice who drew them, and that complainant supposed they were proper to carry out the parol agreement; that, as a consequence, Hicks never became vested with the title to the west part of the land, never having occupied the same, or done anything towards building the house.

"Second. That complainant, at all events, had a lien for the purchase price, in the nature of an equitable mortgage, which she ought to be permitted to foreclose."

The defendant Morania Norton made no defense, and the bill was taken as confessed by her.

Chilson answered and set up that the conveyance to Amos Hicks was complete, and moreover that this had been judicially ascertained and settled in a bill brought by Betsy Hicks against Mrs. Hiscock. The answer also

denied that complainant had any claim in the nature of an equitable mortgage, and averred that Chilson was a *bona fide* purchaser without notice.

The parties having taken such proofs as they desired, the court sustained the complainant's second view and decreed accordingly, and Chilson appealed.

On the hearing in this court complainant's counsel have wisely abstained from pressing their first theory because it is too obviously devoid of force to excuse the consumption of time over it.

As to the second position: There are matters in the record which serve to color the case as a hard one for complainant, and were the court ready to consult the feelings for a rule of decision, and inclined to set an example of disobedience to law, it may be that a result not unfavorable to complainant would be speedily attained. But this cannot be. In the language of our first Chancellor, "this court is bound by the rules of law, and whenever courts shall undertake to judge according to the convenience of parties in each case, there is an end to all fixed and settled rules, and the rights of parties will be left to the caprice of whomsoever may occupy the seats of justice at the time." *Disbrow v. Jones,* Har. Ch., 48–59.

Several questions argued at the bar are practically unimportant. It is only necessary to apply attention to one main consideration, and the inquiry is whether the dealings between complainant and her brother were such as to be consistent with the existence and enforcement of the right of lien contended for.

As preliminary to further inquiry it may be observed that the original transaction out of which the lien is claimed to have arisen was not tainted by any fraud or affected by any mistake of fact. It bears no resemblance to *Merrill v. Allen,* 38 Mich., 487, where the grantee's fraud was not allowed to defeat the grantor's lien. Such cases stand upon their own ground. *Mills v. Bliss,* 55 N. Y., 139; *Frail v. Ellis,* 17 E. L. & E., 457.

The general doctrine relative to what is understood as the vendor's lien upon realty rests on the postulate that it is not equitable for one to absorb another's wealth without recompense; and therefore, as between grantor and grantee the court will intend that the purchased estate was to be held for the unpaid purchase money, unless circumstances are found which repel the presumption. And among the circumstances which will have this effect are reckoned, *first*, the formation of arrangements between the parties, which suffice to make out that reliance was not placed on any unwritten claim against the land; and *second*, the introduction of such schemes by the parties, and their blending of bargainings in such way as to disable the court from ascertaining and defining with any certainty the present amount in money, or from identifying the charge sought to be enforced. Dart's Vendor & Purchaser, ch. 14; *Mackreth v. Symmons*, and notes, 1 L. C. in Eq. 194; *Campbell v. Campbell*, 21 Mich., 438; *Payne v. Avery*, id., 524, 551; *Clark v. Stilson*, 36 Mich., 482; *McKillip v. McKillip*, 8 Barb., 552; *Arlin v. Brown*, 44 N. H., 102; *McCandlish v. Keen*, 13 Gratt., 615; *Buckland v. Pocknell*, 13 Sim., 406; *In re Brentwood Brick and Coal Co.*, 4 Ch. Div., 562: 20 Eng., 758.

The deed to Amos Hicks, and the lease back for complainant's life, and the compound agreement quoted at length, were all parts of the same transaction, and must be viewed together. The case is not one of a simple agreement to sell for $1400, or for any other distinct sum or specific property. Various considerations entered into the scheme, and reciprocal and intersecting interests of influence, and for which there is no standard of estimation, played an important part. What kind of a house was intended does not appear. There is no description. The price was not to exceed $1400. It was to be built on the adjacent lot, and not on that deeded, and five years' time was allowed for doing it. Hicks was to have the right to occupy an undescribed portion of it during his life, and in case his wife should survive him then

she was to have the right to occupy an undescribed portion during her life. No provision was made against this right in case of sale before or after complainant's death, or any provision for change in case of the death of Amos Hicks and the remarriage of his widow. This branch of the transaction contemplated an ill-defined and serious encumbrance in favor of Hicks for two lives, on the lot not deeded.

Again, Hicks was to have the right to work both lots on shares during complainant's life, and this arrangement, which tied up the right of cultivation of the whole quarter section for such term, must have been considered as involving mutual benefits and mutual burdens.

In this intermingling of interests and obligations it is impossible to separate one part from another and assign to it a specific price fixed upon by the parties independent of qualifying incidents. The parties were brother and sister, and the desire for some permanent and reciprocally advantageous arrangement, and their mutual regard and confidence, conduced to lead them into an unhappy snarl. But the authorities which have been referred to are full to show that the court is not able to relieve complainant by declaring an equitable lien.

She bargained away in different forms much more than the special interest in the eighty-acre lot, and accepted in return, not an agreement for a sum in money, or for an amount fixed as the price of the interest in the land, but a medley of promises and obligations, and affording no criterion for finding what money value, if any, was set in this complex affair on the interest in the lot the complainant parted with. And this and the other facts imply that it was not intended that complainant should retain a lien against the interest left after taking out the right to cease at her death.

As the decree below cannot be sustained, it must be reversed and the bill be dismissed. No costs will be given.

The other Justices concurred.