# F. L. MARCHAND, Trustee, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY et al., Respondents.

### St. Louis Court of Appeals, April 5, 1910.

1. **VENDOR'S LIEN: Does not Exist, When.** Where, in a sale of land, it appears a covenant was substituted for a money consideration and was in fact the thing bargained for, a vendor's lien does not exist, for under such circumstances it conclusively appears to have been waived.

2. ———: **Nature of: Not an Estate.** A vendor's lien is not an estate, but is a mere right existing potentially only and without any tangible existence, and exists only as an incident to the obligation to pay the price, and if there is no such obligation, there can be no lien.

3. ———: **Collateral Covenants: Lien Held not to Attach: Facts Stated.** A conveyance was executed and delivered in consideration of certain cash in hand, and covenants contained in the deed obligated the grantee, its successors and assigns, to construct and maintain an intake or passway for water from a river across the lands granted to adjacent lands of the grantor, and to maintain a backwater gate therein. The covenants affixed no obligation to pay either money, property, or services as a consideration for or in lieu of performance, but merely recited that the grantee agreed faithfully to perform. The grantee and its successor in title failed to perform this covenant, and the grantor brought suit to enforce a vendor's lien against the land. *Held,* that the proceeding could not be sustained for the reason said covenants in no manner affixed an obligation to pay either money, property or services as a consideration for the land, but instead substituted a personal obligation to perform distinct undertakings.

Appeal from Lewis Circuit Court.—*Hon. C. M. Stewart,* Judge.

AFFIRMED

*R. G. Blair* and *O. C. Clay* for appellant.

Respondent's grantor, promised and agreed in writing, to build by October 1, 1880, the passway and

watergap in question, as part consideration for the land it bought from Blair, and the building of which structures, respondents now concede is reasonably worth the sum of $700, and this consideration was open and expressed upon the face of Blair's deed. This watergap and backwater gate, respondents concede was never, at any time built. Then there was a failure to that extent, of the consideration, that Blair was to have gotten for his land, and for such failure of the consideration, Blair certainly has a lien for unpaid purchase price. Johnson v. Burks, 103 Mo. App. 221; Major v. Bukley, 51 Mo. 227; Pratt v. Clark, 57 Mo. 189; William v. Crow, 84 Mo. 298; Bishop v. Seal, 87 Mo. App. 256; Simily v. Adams, 88 Mo. App. 621; Johnson v. Burks, 103 Mo. App. 221.

*H. H. Trimble, Palmer Trimble* and *R. W. Ray* for respondent.

A breach of the covenant sued on sounds in damages and cannot be made the subject of a vendor's lien. Brawley v. Catron, 8 Leigh 522; McCandless v. Keen, 13 Grat. 615; Hiscock v. Norton, 42 Mich. 320; Campbell v. Campbell, 21 Mich. 438; Payne v. Avery, 21 Mich. 524; Arlin v. Brown, 44 N. H. 102; Harris v. Hanie, 37 Ark. 348; Bell v. Pelt, 51 Ark. 433; McDonald v. Land Co., 78 Ala. 382; Walker v. Struve, 70 Ala. 167; Patterson v. Edwards, 29 Miss. 71; Barlow v. Delaney, 36 Fed. 577; Peters v. Tunell, 43 Minn. 473; Chase v. Peck, 21 N. Y. 581; Chapman v. Beardsley, 31 Conn. 115; Meigs v. Dimock, 6 Conn. 458; Jones, Liens, sec. 1071; Griffin v. Bower, 7 S. & R. (Pa.) 64, s. c., 10 Am. Dec. 428; Whitely v. Trust Co., 76 Fed. 74; Clark v. Royle, 3 Sim. 499; Parrott v. Sweetland, 37 My. & K. 656; Hammond v. Paton (Mich.), 34 N. W. 72; Clark v. Stilson, 36 Mich. 482; Warner v. Blivens (Mich.), 87 N. W. 49; Gard v. Gard, 108 Cal. 19, 40 Pac. 1059; 3 Pomeroy Eq. Juris., section 1251; Perry on Trusts (4 Ed.), section 235.

NORTONI, J.—This is a suit in equity, on a covenant, the purpose of which is to enforce a vendor's lien upon certain real estate occupied by defendant as parcel of its railroad right of way. The court sustained a demurrer to the petition and plaintiff prosecutes the appeal. The petition is an extended document and it will not be copied in full. So many of the facts therein set forth as are material only will be mentioned.

It appears that plaintiff, F. L. Marchand, is trustee under the will of James G. Blair, deceased, and as such trustee is the proper party plaintiff. The petition discloses substantially that in his lifetime, James G. Blair owned a parcel of real estate consisting of about thirty acres in Lewis county adjacent to the Mississippi river and the defendant's predecessor in title, the St. Louis, Keokuk & Northwestern Railway Company, entered upon and constructed its railroad across the same and adjacent to the west bank of the Mississippi river. It seems the railroad appropriated the defendant's land to its use without either condemning the right of way or procuring a right to do so from the owner. However this may be, on February 2, 1880, James G. Blair and wife conveyed by a competent deed of general warranty to the said St. Louis, Keokuk & Northwestern Railway Company a right of way across said lands together with a narrow strip of land lying between the railroad and the west bank of the Mississippi river. This conveyance was executed by Mr. Blair and his wife and delivered to the railroad company in consideration of three hundred dollars, cash in hand, and certain covenants contained in the deed whereby the railroad company obligated itself and its successors and assigns, among other things, to construct and maintain an intake or passway for water from the Mississippi river under the railroad tracks to and upon the remaining land adjacent to the west side of the railroad, owned by Mr. Blair. It was cove-

nanted, too, that the railroad would construct and maintain a certain backwater gate thereat to the end of preventing the Mississippi river from overflowing Blair's land through the passway at such times as the river might overflow. This passway under the railroad and backwater gate were to be completed on or before October 1, 1880.

The deed from Blair and wife to the railroad company containing the covenant mentioned was duly accepted by the railroad and spread of record in the deed records of Lewis county on March 12, 1880.

The grantee in the deed wholly failed and omitted to construct the passway and water gate required by the covenant therein. And it seems the successors and assigns of such grantee have wholly failed to do so. Through several mesne conveyances, not necessary to mention in detail, the defendant, Chicago, Burlington & Quincy Ry. Co., succeeded to the title thus acquired by the St. Louis, Keokuk & Northwestern Ry. Co., grantee, under the deed from Blair with full notice of the covenants contained in such deed, which covenants are as follows:

"And whereas the said second party in consideration of the contract and agreement upon the part of the said James G. Blair as aforesaid, and of this conveyance, hath contracted, covenanted and agreed with said James G. Blair that it and its successors and assigns shall and will on or before the fifteenth day of April next, erect and build upon and along the west line of the tract so as aforesaid sold and hereinafter conveyed to said second party a good and substantial fence of sufficient height and strength to turn cattle and other stock and to prevent the same from passing over and through the same except at the passway and watergap hereinafter specified; and that said second party, its successors and assigns shall and will maintain and keep said fence when so erected and built in good repair and condition so as to turn cattle and

other stock and prevent the same from passing over
and through the same; and that it, its successors and
assigns shall and will on or before the first day of
October next (A. D. 1880), erect and build a watergap
and passway at the south end of the tract hereinafter
conveyed where an opening now exists under said rail-
road track so as to connect with the Mississippi river
and the land of the said James G. Blair adjoining the
land hereinafter conveyed to said second party on the
west of the said watergap to be not less than twenty
feet wide north and south and to extend sufficiently
far into the river to afford water for stock grazing,
pasturing and running upon the remaining portion of
said tract owned by said James G. Blair as aforesaid,
when said river shall or may be at low water-mark.
The passway under said railroad from said land of
said first party aforesaid to said watergap to be made
and kept in good condition so that cattle and other
stock can pass from said land of said James G. Blair
to said watergap with ease and safety.

"And the second party and its successors and as-
signs shall and will erect and make in said passway
under said railroad a backwater gate so as to prevent
the water from the river when the same is rising, from
backing upon or overflowing the said land of the said
James G. Blair aforesaid. Said passway to be kept
open except in high waters; and said second party and
its successors shall keep said passway and watergap
in good condition and repair so as to prevent cattle and
other stock from passing over or through the same
or escaping from the land of said James G. Blair afore-
said out of or through same; and shall maintain and
keep said backwater gate in good condition and repair;
which said passway to run under said railroad and to
the river therefrom, shall be held and used by said
James G. Blair, his heirs and assigns solely and ex-
clusively.

"And the said James G. Blair, his heirs and assigns, shall free of charge have the right and privilege of joining, attaching and uniting any fence that he or they may erect or build on the tract of said James G. Blair adjoining the tract herein conveyed to the said second party, on the west side thereof as aforesaid, with the said fence so as aforesaid to be erected on the west line of the tract herein conveyed to the said second party.

"And said second party does hereby covenant and agree for itself and successors and assigns with said James G. Blair, his heirs and assigns, that it, its successors and assigns shall and will faithfully perform and carry out the said several contracts, covenants and stipulations upon its and their and each of their respective parts."

It is averred that though the original grantee and its assigns, including the present defendant, have continued to hold and enjoy the lands thus acquired ever since, they, and each of them, have at all times failed and omitted to perform the obligation of the covenant by constructing the passway and backwater gate as agreed. In concluding, the petition recites that the reasonable value of the work and material necessary to erect and build said watergap, passway and water gate at the date of the deed from James G. Blair and wife to the St. Louis, Keokuk & Northwestern Ry. Co. and on October 1st next thereafter, was seven hundred dollars, for which sum, with interest thereon at the rate of six per cent per annum from such date, judgment is prayed and that said seven hundred dollars, with interest thereon be charged as vendor's lien upon the right of way so conveyed by James G. Blair to the St. Louis, Keokuk & Northwestern Ry. Co., and the road bed, railroad ties and iron rails thereon where the same runs through the land mentioned.

The case stated presents a remarkable feature in that it seeks to reduce the covenants for the perform-

ance of the obligations therein entailed to a monetary value and then extend a vendor's lien upon the lands for the amount so ascertained. According to the settled principles of equity jurisprudence, which authorize and attend the enforcement of a vendor's lien, it is obvious that such a proceeding may not be sustained, for the reason that the covenants in no manner affix an obligation to pay either money, property, or services as a consideration for the land, but instead it substitutes for the price or consideration money a personal obligation to perform distinct undertakings as therein indicated. The authorities are unanimous to the effect that if it appear a covenant is substituted for the consideration money and was in fact the thing bargained for, the vendor's lien will not exist, for in such circumstances it conclusively appears to have been waived. Such has been the arbitrary rule of decision in chancery jurisprudence from the earliest history of vendor's liens, as will appear by reference to the following authorities. The doctrine found its origin, we believe, in Clark v. Royle, 3 Sim. 499. See also Parrott v. Sweetland, 3 My. & Ke. 655. That such is the accepted rule of decision, see the following authorities: 3 Pomeroy's Equity Jur., secs. 1251, 1252; 1 Perry on Trusts (4 Ed.), sec. 235; 29 Am. and Eng. Ency. Law (2 Ed.), 743, 744, 745; 2 Jones on Liens, sec. 1071; Bispham's Equity (5 Ed.), sec. 355; 2 Washburn on Real Property (6 Ed.), sec. 1038; Brawley v. Catron, 8 Leigh (Va.) 522; 2 Sugden on Vendors, 380, 381; Hiscock v. Norton, 42 Mich. 320; McKillip v. McKillip, 8 Barb. (N. Y.) 552; Whiteley v. Central Trust Co., 76 Fed. 74.

For the purposes of the case, we may assume that the covenants contained in the Blair deed are real covenants and that they follow the title to the land operating a like obligation on subsequent grantees, but after conceding this, we are unable to perceive how

147 App—40

such covenants may be reduced to a monetary value as is sought in the bill before us and the amount of such value enforced as a vendor's lien upon the land. It is certain that no express lien for the security of the performance of such covenants appears to have been reserved in the deed, and in the absence of an express intention to that end appearing, none may be enforced except upon the ground that an implied vendor's lien arises to secure the performance of covenants indicating something other than the payment of money, property, services or other valuable exchange as the purchase price in whole or in part.

That a vendor's lien may be enforced in the courts of this State in a proper case is beyond question. However, the vendor's lien is not an estate but on the contrary it is a mere right, existing potentially only and without any tangible existence. Such right exists only as an incident to the obligation to pay the price for the land and if there is no obligation to pay the consideration in some valuable exchange, there is certainly no right to enforce as incident thereto.

In Gilman v. Brown, 1 Mason 191-212, Fed. Cas. No. 5441, Justice STORY says the rule affording a vendor's lien under proper circumstances is manifestly founded on a supposed conformity with the intention of the parties, upon which the law raises an implied contract; and therefore it is not inflexible, but ceases to act when the circumstances of the case do not justify such a conclusion. It is therefore obvious, when it appears the parties intended payment of the purchase price shall not be made in money, property, services or some other valuable exchange, that no vendor's lien may be enforced as a result of an implied intention to secure the payment. In this view, it has been held from the beginning, if it appears that for the consideration of the conveyance covenants are taken which require the covenantee to perform collateral matters other than the payment of some valuable exchange, no

lien will be implied for the performance of such covenants unless the same is expressly reserved in the deed. One reason underlying the doctrine is that the law seeks to afford freedom in the barter and sale of real estate. And for that reason it discountenances secret trusts or liens arising by implication which may not only make against the free and untrammeled disposition of real property but may operate as well to entail a considerable charge upon a subsequent grantee, who, though having notice of the right, may not be able to estimate and appreciate the amount for which it exists. The cases therefore assert that where the consideration for the conveyance is the entering into an agreement to do or not to do certain things and the remedy for the breach of such agreement consists in an action for unliquidated damages, the parties will be presumed not to have intended that the land should remain charged with the vendor's lien to secure such unliquidated damages which may never accrue and are unascertainable by third parties dealing with the land.

The doctrine predicates in those circumstances upon the theory that the consideration for the deed in whole or in part is the entering into the covenants by the grantee and that such covenants are a substitute for the price. In other words, it is said that in such circumstances the deed itself discloses the parties intended the covenant should be substituted for the consideration money or other valuable exchange and was therefore in fact the thing bargained for instead of money, property, services or other valuable exchange indicating a value certain of ascertainment.

After an examination of many authorities, we are persuaded the general doctrine on the subject is accurately stated in the 29th Am. and Eng. Ency. Law (2 Ed. ), 744, 745, as follows:

"In order that the lien may arise it is fundamental that there should be an ascertained, fixed consideration

either of money or its equivalent whereby there arises a certain, absolute debt of the vendee to the vendor in consideration of the transfer of the land. It does not exist in behalf of any uncertain, contingent, or unliquidated demand. Thus, where the consideration was the performance by the vendee of certain covenants for the breach of which the remedy is an action at law sounding in damages, no lien exists; nor where the consideration was the assumption by the vendee of certain liabilities of the vendor, and those liabilities depended on conditions which afterwards became defeated so that the liability of the vendor has ceased, no lien exists, as the consideration was not the payment by the vendee of a sum certain, but the protection of the vendor against the contingent loss. The consideration cannot be extended to cover collateral obligations or duties. Nor is the lien enforced where the consideration would be an agreement to support the vendor for life, or where the consideration is of such a nature as not to be susceptible of accurate ascertainment as to the amount of the charge to be impressed on land, or the fulfillment of conditions embracing an indefinite period. The impracticability of their enforcement operates the withholding of equitable relief. The cardinal rule deduced from all the cases seems to be that the lien lies only for the debt, which may be either for money or the rendition of service or any other valuable consideration, definite and ascertained, and stipulated as the equivalent of the amount of the purchase price, and arising out of the sale of land against which the lien is sought to be enforced."

To the same effect is 3 Pomeroy's Equity Jur. (3 Ed.), secs. 1251, 1252; Bispham's Equity (6 Ed.), sec. 355; 2 Jones on Liens, sec. 1071; 2 Washburn's Real Property (6 Ed.), sec. 1038; Whiteley v. Central Trust Co., 76 Fed. 74; 2 Sugden on Vendors, 380, 381; Clark v. Royle, 3 Sim. 499; Parrott v. Sweetland, 3 My. & Ke. 655; 1 Perry on Trusts (4 Ed.), sec. 235;

Brawley v. Catron, 8 Leigh (Va.), 522; Hiscock v.
Norton, 42 Mich. 320; McKillip v. McKillip, 8 Barb.
(N. Y.), 552; Payne v. Avery, 21 Mich 524; Gard v.
Gard, 108 Cal. 19, s. c. 40 Pac. 1059. See also other
authorities cited in the brief.

The doctrine thus stated we believe to be some-
what broader than that which obtains in this State as
reflected by our Supreme Court in Williams v. Crow,
84 Mo. 298. That case, in its broadest aspect, seems-
to be at variance with the rule which universally ob-
tains and indeed an enforcement of the full measure
of the rule which it seems to portray would impinge
established equitable principles which obtain with re-
spect to the vendor's lien. Even though not precisely
in point, that case has given us much concern in reach-
ing a conclusion as to the proper disposition of this
one. If that case were in point, of course, we would
follow it and rule the case in judgment accordingly, for
the reason the Constitution of the State commands
that this court shall be controlled by the last previous
ruling of the Supreme Court on any question of law
or equity. The facts in judgment and on which the
vendor's lien was sustained in Williams v. Crow are
similar to the cause now under consideration only in
that each case involves a covenant as a basis for the
relief sought, otherwise they are entirely dissimilar.
In Williams v. Crow, the suit was between the im-
mediate parties to the conveyance and the covenant
entailed an express obligation upon the grantee as a
part of the consideration in the deed to discharge an
encumbrance on the estate, if it should be established,
or pay money. The encumbrance, having been there-
after established, and the covenant breached by the
failure of Crow to discharge his express obligation in
respect to the payment of the same, the court sus-
tained a vendor's lien for the amount the grantor was
required to pay as though it were consideration money
ascertained and certain.

Now the case in judgment here is to be distinguished in two respects, first, the covenant contained in the present deed in no manner imposes an *express* obligation upon the grantee or assigns *to pay* anything in any event. But on the contrary, it is wholly a collateral covenant, though part of the consideration of course, obligating the grantee to the performance of certain designated acts, to-wit, the building of a passway and backwater gate. There is not a word contained in the present covenant indicating an express promise on the part of the grantee to pay any money, property, services or other valuable exchange as a part of the price of the land, but instead it became personally bound thereby to erect and maintain the structures referred to *as a substitute for payment*. Besides, it is sought in this suit to enforce this unliquidated covenant against a subsequent grantee, who, although having knowledge of the covenant itself, is, as all must be, entirely ignorant of the uncertain portion of the purchase price, if any, concealed therein. It seems that the Supreme Court in Williams v. Crow seized upon the strong equities presented by that case and enforced a vendor's lien which arose out of a violation of the covenant referred to between the immediate parties to the deed. In so doing, no doubt, a just result was had, for it appears that Crow, the grantee, not only agreed to remove the encumbrance as referred to in the opinion in that case as a part of the consideration money but expressly agreed as well to pay the loss entailed by his failure to do so. Through omitting to remove the encumbrance Crow entailed a consequent loss upon the grantor by diminishing the consideration money to that extent and this amount was ascertained and settled in a suit at law on the covenant prior to the proceeding in equity to enforce the vendor's lien. The judgment of the Supreme Court in that case involves the idea that Crow, the grantee, against whom the lien was enforced, had failed to pay

a portion of the consideration according to his *express obligations to pay* in money or relieve his grantor from so doing. In that respect, it conforms to the doctrine maintained throughout all of the cases and the text-books to the effect that the vendor's lien may be enforced only as an incident to an obligation to pay in money, property, services or some like valuable exchange.

The present case presents no such idea. It expressly appears from the covenants relied upon here that no such an obligation was assumed; nothing therein indicates an express promise to pay money in any event, but on the contrary the obligation vouchsafed therein pertains rather to the performance of independent acts wholly irrespective of the thought that it involves the payment of money, property, or services or other exchange susceptible of certain ascertainment to the end that a subsequent grantee with notice might know the extent of the burden assumed. The covenant relied upon under the rule of all of the authorities is one which is regarded to have been taken as a substitute for the consideration money. In other words, the covenants in this deed clearly disclose an intention to the effect that the grantor bargained for the covenants and not for purchase money, property or other valuable exchange. See authorities supra. To sustain this action would result in establishing an anomaly in our jurisprudence touching the matter of vendor's liens and extend the rule of Williams v. Crow quite beyond anything forecasted by that case as sound doctrine.

Entertaining these views, it will be unnecessary to consider the arguments contained in the briefs as to the proper measure of damages and the question as to plaintiff's cause of action, if any, being barred by the Statute of Limitations.

The judgment should be affirmed. It is so ordered. All concur.