[No. 1992.   Rehearing denied Nov. 12, 1917.]

# W. W. WATSON v. FIRST NATIONAL BANK OF ROSWELL, et al.

### SYLLABUS BY THE COURT.

As a general rule, a mortgagor who has conveyed the equity of redemption by warranty deed to a third person cannot maintain a bill to redeem, yet where his conveyance contains a covenant whereby the grantees assume, the payment of vendor's lien notes previously made by the grantor, and subsequently default in the payment of said notes, which results in the foreclosure of the vendor's lien created thereby, and a sale of the property subject to the lien for an amount less than said vendor's lien, as result of which deficiency judgments are secured against the maker of the vendor's lien notes, who pays said judgments, the maker of said vendor's lien notes may, by virtue of such interest, redeem from the foreclosure sale of said lien notes.

Appeal from District Court, Chaves County; McClure, Judge.

Suit by W. W. Watson against the First National Bank of Roswell, G. A. Davisosn, John Morry, Jr., Alice C. Morrow, J. R. Morrow, and another. Decree for plaintiff against the defendants named, and they appeal. Decree affirmed.

L. O. Fullen and W. A. Dunn, both of Roswell, for appellants.

A mortgagor of real estate, who has conveyed the mortgaged premises by warranty deed, cannot maintain an action to redeem.

Brooks v. Keister, 45 Iowa 303; Ingersoll v. Sawyer, (Mass.) 2 Pick. 276; Pearcy v. Tate, (Tenn.) 19 S. W. 323; Phillips v. Leavitt, 54 Me. 405; Palmer v. Bray, (Mich.) 98 N. W. 849; Am. Freehold Land Mortgage Co. v. Sewell, 13 L. R. A. 299; Miller v. Green, (Ill.) 28 N. E. 837.

27 Cyc. 1813.
2 Wiltsie Mortg. For., Sec. 1059, 1082.

Reid & Hervey and H. C. Maynard, all of Roswell, for appellee.

A mortgagor, under circumstances stated, may redeem.

North Dakota Horse & C. Co. v. Serumgard, 29 L. R. A. (N. S.) 508; In re. Erastus Willard, 5 Wend. 95; Frisbee v. Frisbee, 29 Atl. 1115; Cardwell v. Virginia State Ins. Co., 65 So. 80; 2 Wiltsie on Foreclosure, Sec. 1100; Higgs v. McDuffie, 157 Pac. 795; Pearcy v. Tate, (Tenn.) 19 S. W. 323; Wehrheim v. Smith, (Ill.) 80 N. E. 908; Davis v. Langsdale, 41 Ind. 339; North Dakota Horse & C. Co. v. Serumgard, Supra; 2 Jones on Mortgages, Last Edition 1056; Smith v. Austin, 9 Mich. 475.

### STATEMENT OF FACTS.

One W. W. Watson, the appellee, brought this suit in the district court of Chaves county, to redeem land from sale under foreclosure proceedings. The lands in question were purchased by Watson from one C. C. Formwalt, on January 1, 1911. Formwalt's deed reserved a vendor's lien on the premises to secure payment of $5,450, evidenced by certain vendor's lien notes. Watson also assumed the payment of two prior mortgages aggregating $6,600. On August 12, 1912, Watson, the appellee, by warranty deed, conveyed to C. D. Bonney and C. W. Haynes, who assumed the payment of the vendor's lien notes and the prior mortgages. On January 22, 1915, Formwalt brought a suit to foreclose the vendor's lien, making Bonney, Haynes, and Watson, the appellee, parties defendant. The Dexter State Bank, of Dexter, N. M., which had purchased one of the vendor's lien notes, was also made defendant.

Judgement was rendered in that case in favor of the Dexter State Bank for $1,450, with interest, etc., the amount of the vendor's lien note held by it, and in favor of Formwalt in the amount of the remaining

notes less certain payments, and further provided for the foreclosure of said vendor's lien. On the 16th day of September, 1914, following, the premises in question were sold by a special master of the court and purchased by one R. H. McCune for $5,025, which sale was subsequently confirmed. After McCuen received the special master's deed, he quitclaimed the property on September 17, 1914, to Bonney and Haynes, who upon the same day, by warranty deed, conveyed the property to the First National Bank of Roswell, which bank subsequently on the 11th day of November, 1914, by warranty deed, conveyed to G. A. Davisson, who on January 15, 1915, by warranty deed, conveyed to James Morrow and John Morrow, Jr. All parties to the deeds subsequent to the special master's deed were joined as parties defendant in the court below, except C. W. Haynes and James Morrow. The two latter having died, their heirs at law, together with the administratrix of Haynes, were made defendants.

The amount realized on said foreclosure sale being insufficient to satisfy the amount found due on the notes, deficiency judgments in favor of Formwalt and the Dexter Bank were rendered against the appellee Watson, and also against Bonney and Haynes. The deficiency judgment in favor of Formwalt was for $1,887.63, and in favor of the Dexter State Bank for $666.03. The appellee Watson paid these deficiency judgments in April, 1915. The defendants, except Bonney, filed a general demurrer to the complaint, which was overruled. From the allegations contained in the answer, which is not denied, it appears that R. H. McCune was acting for and in behalf of the First National Bank of Roswell when he purchased the lands in controversy at the foreclosure sale, which bank had interested itself in the transaction because it held an indebtedness of $7,500 against Bonney and Haynes; that the defendant Davisson had agreed to pay $16,000 for the land upon the condition that he could procure a marketable title. It further appears from the answer that Bonney and Haynes, desiring to

redeem from the foreclosure sale, concluded an arrangement with the bank for the necessary money, redeeming the property, and receiving the deed from McCune. On the same day, by warranty deed, they conveyed to the First National Bank, on an understanding that the said bank would convey the premises to Davisson or any one designated by him, on receipt of $16,000, which was to be applied as follows: $5,025 for the redemption money advanced by the bank; $6,000, together with accrued interest, for the redemption of the first mortgage; the balance of said consideration to be credited on the indebtedness due by Bonney and Haynes to the bank.

The lands were conveyed to Davisson by warranty deed of the bank on November 11, 1914, the bank receiving $10,000 and Davisson assuming payment of the first moragage. Accrued interest on said mortgage, amounting to $612, was paid by the bank, and the balance remaining in its hands was applied on the indebtedness of Bonney and Haynes, in accordance with the prior agreement. The defendants Morrows answered separately, stating in substance that they had purchased the land from Davisson without knowledge of the title other than was disclosed by the public records, a contention admitted by the appellee at the trial. After trial, the court made findings of fact and conclusions of law sustaining the contentions of the appellee. A degree was entered against the said First National Bank, G. A. Davisson, John Morrow, Jr., Alice Morrow, and J. R. Morrow, requiring them to pay appellee the amount of the deficiency judgments, with interest, which he had previously paid, and, on their failure so to do within 20 days, appellee was given 30 days from the date of the decree within which to redeem said lands by paying to the clerk of court the required sum for such redemption. From this decree the defendants affected have taken this appeal.

## OPINION OF THE COURT.

HANNA, C. J. (after stating the facts as above). The first point urged by appellants is that a mort-

gagor of real estate who has conveyed the mortgaged premises by warranty deed cannot maintain an action to redeem. Appellants concede that the foreclosure of the vendor's lien note was not strictly a foreclosure proceeding in the ordinary understanding of such proceedings, but contend that the appellee, as the maker of the vendor's lien notes, stands in substantially the same position as would a mortgagor, and is to be governed by the same principles of law. It is contended by appellants that because the appellee conveyed the lands in question by warranty deed to Bonney and Haynes, by which deed he conveyed to said grantees "all the estate, right, title, interest, claim, and demand whatsoever" of the grantor, either in law or equity, and because at no time subsequent to said conveyance did he acquire any other right or interest, that therefore he is without any interest in the property sufficient to support a right of redemption. The New Mexico statute (section 4775, Code 1915) confers a right of redemption upon three classes of persons after sale under foreclosure: First, the mortgagor; second, his assigns; and third, any other party interested in the real estate. The question therefore is whether or not the appellee comes withing the designation of the third class, as a party interested in the real estate.

We shall consider this case solely from the standpoint of appellee's right of redemption under the New Mexico statute. It is conceded by appellee that there is some authority for the proposition that a mortgagor who conveys the land by quitclaim deed, or who is compelled to part with his title by legal proceedings, such as a sale of his equity of redemption upon execution or otherwise, loses his right of redemption by the same act that he loses all interest in the land; appellees position being that he may assert the statutory right of redemption, even though he has executed a deed of conveyance if the grantee assumes as a part of the consideration the existing mortgage and agrees to pay it and fails to do so, whereby appellee is compelled to pay any portion thereof, appellee points out

that this proposition is not based upon the relation of principal and surety, nor upon the right of subrogation which a surety, is allowed under the law upon the payment of his principals debt. Appellee concedes that where a party mortgages land and conveys it to one who assumes and agrees to pay the mortgage, the undisputed authority is that thereafter the relation of the two parties is that of principal and surety, but contends that in this case the mortgagor (appellee here), in addition to the rights of the surety, has a right of his own to redeem the property from foreclosure sale under the vendor's lien, which the grantees assumed and agreed to pay as a part of the consideration. In brief, it is asserted that he maintains his relation as mortgagor, or at least is a party interested in the real estate until the debt is paid, and it is contended that the interest which he has in the real estate is sufficient to entitle him to redeem under the statute, in case he is required or compelled to pay the debt, or any part thereof. It is insisted that any other conclusion would, at least in this case, assist a party to obtain a profit by the violation of his agreement. It is pointed out that Haynes and Bonney procured the payment of a large debt owed by them to the First National Bank by entering into a conspiracy with the bank, which was a direct violation of the obligation assumed by them in the deed of conveyance to them.

It is apparent from the peculiar nature of the facts in this case that a case precisely in point would necessarily be difficult to find. In fact, none such has been called to our attention, nor have we been able to find one closely analogous to the case under consideration. Our attention is directed to the case of Higgs v. McDuffie, 81 Or. 256, 157 Pac. 794, 158 Pac. 953, as a case more nearly in point than any other, and a full understanding of the holding of the Supreme Court of Oregon requires a comprehensive statement of the facts of this case, which we therefore make, taking same from appellee's brief:

"The party seeking to redeem (Higgs) had owned two

tracts of land designated as lots A and B, lot A being sub-
ject to a $6,000 purchase money mortgage. He conveyed
these lands to Winard and Goodman, who assumed and
agreed to pay the said mortgage; and also, as a part of the
purchase price, they executed to the grantor upon both tracts
a mortgage securing two notes for $2,000 and $8,000. The
$2,000 note was afterwards paid, and Higgs assigned the
$8,000 note to one Strong, together with the mortgage secur-
ing the same. The legal title to the property finally landed
in a man by the name of Phillips, who was a trustee of the
bankrupt estate of a W. Louders. The first mortgage was
foreclosed, and the owner of the second mortgage note, be-
ing made a defendant, brought in the other defendants by
way of cross-complaint, and secured a decree of foreclosure
on the second mortgage. The first mortgage was decreed to
be a first lien upon lot A and the second mortgage a second
lien upon lot A and a first lien upon lot B, and it was de-
creed that both be foreclosed and the property be sold sep-
arately. Lot A was sold and purchased by one Mahoney for
the exact amount of the first moragage, and lot B was
purchased by the owner of the second mortgage, Strong, for
$1,000, leaving a large deficiency. Afterwards Phillips, the
trustees in bankruptcy of the owner of the legal title, quit-
claimed all of his estate, right, title and equity of redemp-
tion to Mahoney, the party who had purchased lot A under
the first mortgage foreclosure. Strong afterwards assigned
to Higgs the judgment and decree made in favor of Strong
in the foreclosure suit, the probability being, although not
stated in the case, that Higgs, by reason of his indorsement
on the $8,000 note, was compelled to pay the deficiency.
Higgs applied to the sheriff to redeem lot A, and Mahoney,
the purchaser, objected."

The Oregon court in this case said:

"The land was subject to redemption by the judgment
debtor who came into being at the rendition of the decree,
and not before. The individual having no existence prior to
the decree with its feature of personal judgment, is the only
one entitled to redeem. He is not estopped by reason of
the covenant in his deed because it was made subject to the
mortgage. In other words, that incumbrance was a con-
dition of the estate conveyed. It was in effect a defeas-
ance clause, by means of which the title of the grantees
might be defeated. * * * It is not a case of covenanting
grantor trying to enforce an after-acquired title in face of
his deed. It is an instance where he is entitled to enjoy the
results which the law deduct from the very instrument
under which his grantees and their successors in interest
would resist his claim. They cannot complain, because they
have not kept the faith of their covenant to assume and pay
the mortgage. They cannot escape the consequences which
the statute visits upon them, to wit, the elimination of their
estate by foreclosure with the coincident creation of the right
of redempion to be exercised by the judgment debtor. All
these sequelae flow from the deed under which the grantees

of Higgs combat his right to redeem. They were to be expected by them and cannot be avoided. To hold otherwise would be to allow them and their successor in interest, the purchaser at the sale, to refuse to pay the mortgage, and at the same time to reap an advantage over the man primarily liable for the same, all by virtue of their having broken covenant with him."

In this Oregon case the right to redeem under the statute was conferred upon judgment debtors. In this the case is not in point, but its logic is clearly applicable to the instant case. Appellee contends that he parted with his interest in the land and ceased to be a party interested in the same, upon the condition that the said vendor's lien debt as part of the consideration was paid by Haynes and Bonney, and upon that condition only. Therefore, whenever he was compelled to pay any part of that debt, the right of redemption sprang into being, so far as Watson was concerned, provided, of course, it was exercised within the nine months period allowed by our statute for redemption, which is admitted to be the case here. It is not contended that the payment of the deficiency judgments gave the interest in the land, upon which the right of redemption is based, but that payment of the judgments revived appellee's interest in said land, which was retained at the time the transfer was made.

It has been held that a mortgagor who has conveyed land subject to a mortgage, and has expressly reserved a lien for the purchase money, may redeem by virtue of such interest. Cardwell v. Va. State Insurance Co., 186 Ala. 261, 65 South. 80; Pearcy v. Tate, 91 Tenn. 478, 19 S. W. 323. There seems to be a conflict of authority, however, as to whether, upon the absolute conveyance of real estate, a lien for the purchase money remaining unpaid arises in favor of the vendor. In this connection, we quote from 39 Cyc. 1795:

"In most jurisdictions the right of a vendor to such a lien is recognized, subject, in some, to statutory modifications. But while the lien is thus recognized in England and Canada and in most of our states, there are a number of states in which the existence of such a lien is or seems to be denied."

In an early New Mexico case, Bates v. Childers, 5 N. M. 62, 20 Pac. 164, it was held:

"Where it is stipulated in the contract for the sale of an undivided interest in a mine that the unpaid balance of purchase money shall be paid when the mine is sold, out of the proceeds of sale, the vendee to reimburse himself for any money necessarily expended by him for assessment purposes, out of the first money realized from the sale, the residue to go to the vendor until he shall receive the amount due him, the balance to be paid is a sum certain, for which a vendor's lien will exist."

The court further held that in such a proceeding it was not necessary to show an express reservation by the seller to create the vendor's lien; it will be presumed by a court of equity as an incident to the transaction, in the absence of any facts showing an intention to exclude it. It thus appears that the early holding of our territorial court is in line with the weight of authority in this country.

A question, however, would remain, whether, assuming that a vendor's lien can be implied from the facts and circumstances of the case, subsequent vendees are bound thereby. This would seem to rest upon the question of whether or not the deed from Watson, appellee, to Haynes and Bonney constituted notice to the subsequent vendees such as to bring home to them knowledge of the transaction and thereby affect their rights in the premises. It is strenuously contended by the Morrows that they are only charged with the record title, which gave them no notice of any right or interest in the land in appellee. There might be merit in this contention, were it not for the fact that the deed from appellee to Bonney and Haynes contained a covenant whereby the grantees assumed payment of the vendor's lien notes and the prior mortgages. The record pertaining to the foreclosure of the vendors lien notes clearly evidenced the fact that Bonney and Haynes had defaulted in their covenant in this respect. The deficiency judgments obtained against appellee and Bonney and Haynes were further evidence of this default, for which reason we conclude that the subsequent vendees not only

had notice concerning the assumption of the vendor's lien notes and mortgages as a part of the consideration, but they also necessarily had notice of the failure to pay this consideration, and the right subsequently arising in appellee when he was called upon to pay and did pay the deficiency judgments. Our conclusion in this respect is thus briefly summarized, though as a general rule a mortgagor who has conveyed the equity of redemption by warranty deed to a third person cannot maintain a bill to redeem, yet where his conveyance contains a covenant whereby the grantees assume the payment of vendor's lien notes previously made by the grantor, and subsequently defaulted in the payment of said notes, which results in the foreclosure of the vendor's lien created thereby and a sale of the property subject to the lien for an amount less than said vendor's lien, as result of which deficiency judgments are secured against the maker of the vendor's lien notes, who pays said judgments, the maker of said vendor's lien notes may, by virtue of such interest, redeem from the foreclosure sale of said lien notes.

It is next contended by the appellants that the sale of mortgaged premises, made pursuant to decree of a competent court having jurisdiction of the subject-matter and of the parties, exhausts every remedy against the land, and, for any deficiency which may remain after the proceeds of sale are applied on the debt, the remedy is by personal judgment against the parties liable and the issuance of execution. We are not concerned however with this contention, as the remedy sought is not against the land, but is an equitable action seeking a right of redemption under the statute. We will therefore not further discuss the point raised.

The third point is that foreclosure of a mortgage extinguishes the equity of redemption, and that the owner of the equity foreclosed is primarily entitled to redeem from the mortgage sale, and if he does redeem, persons holding liens on the premises, good as against him, are not entitled to make redemption from

him, since the freeing of his title from the incumbrance of the mortgage inures to the benefit of his lien creditors. We need not discuss the correctness or incorrectness of this statement of the law. This is not alone a question of the equity of redemption, but is essentially a question of the right of redemption under our statute, which, as we have already indicated, applies primarily to the mortgagor and those succeeding to his title and to such persons as have a title or interest in the mortgaged premises. As pointed out by appellee, it may be perfectly true that one sale of the property exhausts the right to sell under that particular decree and still there might be numerous others who have a right of redemption under the statute.

The final point presented by appellant's brief is that the appellate court will not sustain a decree unauthorized by the pleadings in the case. In this connection it is contended by appellants that there is no theory of the case on which the trial court might have proceeded in ordering appellants to reimburse the appellee for the deficiency judgments which the latter had satisfied; that the degree in this respect is without the issues raised by the pleadings and the evidence; that there is no allegation or proof that Bonney and the estate of Haynes are insolvent, and that they being the primary debtors, no equitable reason exists for saddling their debt on the appellants. It is also urged that if the arrangement pleaded in the answer whereby the First National Bank, Davisson, Bonney, and Haynes procured the property in question at a foreclosure sale, and transferred the same ultimately to the Morrows, be regarded as an attempt to prefer a creditor, appellee might have recourse on Davisson and the bank in a proper proceeding, provided he could show injury from their said acts; and, this not being an insolvency or bankruptcy proceeding, no rule of equity demands that appellants should be charged with their debt. In view of our conclusions in this opinion as to the existence of an implied or equitable lien in favor of appellee, and of the notice to the Morrows which arose by reason of the condition of the

record title, this question becomes of little or no importance. In this connection appellee points out that this provision in the decree was undoubtedly included by the trial court to protect the interest of appellants, by reason of the fact that the property in question had at one time sold for $40,000, and shortly after the foreclosure sale was acquired by one of the appellants for $16,000. It is pointed out that to allow Watson, the appellee, an absolute right of redemption would involve the appellants, or some of them, in considerable loss, for which reason the trial court evidently sought to require that the appellee should be made whole by requiring the payment to him of the money of the deficiency judgments, which he had been required to assume. It is apparent that this provision is in the interest of appellants, and one concerning which they should not be heard to complain.

For the reasons stated, we conclude that the decree of the district court should be affirmed, and it is so ordered.

PARKER and ROBERTS, J. J., concur.