ZUMWALT et al. v. GOODWIN.
No. 2588.

Circuit Court of Appeals, Tenth Circuit.
Jan. 19, 1943.

J. Benson Newell, of Las Cruces, N. M., for appellants.

W. C. Whatley and R. C. Garland, both of Las Cruces, N. M., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellee, Frank C. Goodwin, a resident of Texas, filed this suit against Jesse K. Morrison and wife, residents of New Mexico, to recover a judgement on a note for $4,800.00 (plus interest and attorney fees), which he and one Tom Gibson[1] had signed as sureties for the Morrisons to the State National Bank at El Paso, Texas, on January 28, 1941, and which he, the appellee, had paid upon default of the Morrisons. He also sought foreclosure of a first mortgage deed on eleven lots in Hot Springs, New Mexico, which the Morrisons had given him as security in the event of their default and his payment of the note. C. E. Henson, Nettie L. Henson, and Marie Zumwalt, also citizens of New Mexico, were named defendants as parties claiming some interest or lien upon the mortgaged real estate, but which he alleged was junior and inferior to his first mortgage lien. He prayed for judgment on the note and foreclosure of the mortgage as a first lien upon the property, to be applied in satisfaction of his judgment.

The Morrisons defaulted and judgment was rendered against them in favor of Goodwin. The Hensons and Marie Zumwalt answered, asserting a vendor's lien for the unpaid purchase price of the mortgaged real estate in the sum of $7,000.00, of which, they alleged, the appellee had knowledge at the time his mortgage was executed, and by reason of which they also allege the Morrisons were prevented from executing a mortgage in preference to the vendor's lien. The trial court sustained the mortgage as a first lien upon the property, rendered judgment on the notes, and ordered the mortgage foreclosed in satisfaction of the judgment. The Hensons and Marie Zumwalt have appealed.

From the sharply disputed evidence, the trial court found that early in May, 1940, Jesse K. Morrison made tentative arrangements with C. E. Henson and wife, and Tom Hobbs and wife, for the purchase of the eleven lots located in Hot Springs, New Mexico.[2] In order to secure the necessary down payment on the purchase

---

[1] Tom Gibson is since deceased and Goodwin is the assignee of his rights under the notes and mortgage.

[2] Lots 1 to 5 were owned by Tom Hobbs and wife, lots 6 to 11 were owned by C.

E. Henson and wife. Soon after the sale of the lots, Tom Hobbs died, leaving his wife as sole heir, who has since remarried and appears here as Marie Zumwalt.

price of the lots, Morrison induced the appellee, Goodwin, and Gibson to become sureties or guarantors on his note to the State National Bank of El Paso, Texas, for the sum of $5,000.00. According to the findings of the trial court, Morrison represented to Gibson and Goodwin that he could secure clear title to the lots upon the payment of $5,000.00, but that they knew at the time the total sale price for the real estate was $12,000.00. They did not rely upon the lots as security for becoming sureties on the note, but relied upon his representation that he would finance the construction of tourist apartments and filling station upon the lots, the revenues from which he would repay the loan to the bank, and in the event of his failure to finance the construction of the tourist apartments and filling station, he would give Goodwin and Gibson a first mortgage upon the lots as security for their guaranty on the note to the bank. The court further found that on the same date (May 8, 1940), Morrison paid the sum of $5,000.00 to Henson and Hobbs and received a warranty deed to the lots in question. At the same time, he executed and delivered separate notes to Henson and Hobbs, each in the sum of $3,500.00, payable on or before three years from the date of execution. He also agreed in writing to execute and deliver to Henson and Hobbs a second mortgage on the property when the contemplated buildings were constructed on the lots, or within one year from the date of the sale. This agreement in writing was filed of record in Sierra County, New Mexico, where the lots are located, on July 7, 1940. Morrison was unable to finance the construction of the tourist apartments and filling station as contemplated. Meanwhile, the note to the bank in El Paso matured on which there was a $4,800.00 balance. In accordance with his agreement with Goodwin and Gibson, and to induce them to join as sureties on the renewal note to the bank in the sum of $4,800.00, Morrison executed and delivered to Goodwin and Gibson a mortgage deed dated January 28, 1941, on the lots in question as security for the note in the event of default by Morrison, and payment by Goodwin and Gibson. The mortgage deed was filed of record in Sierra County, New Mexico on January 29, 1941. The

court found that Goodwin had made no search of the records of Sierra County when he took the mortgage, nor did he have actual notice that the Hensons and Marie Zumwalt claimed a prior lien on the lots for the unpaid purchase price. On the due date, Goodwin and Gibson paid the note to the bank in El Paso and the same was endorsed to them.

Based on these facts, the court held that the written agreement executed by Morrisons to Henson and Hobbs (Marie Zumwalt), and filed of record in Sierra County July 7, 1940, obligated the Morrisons to give the vendors a second mortgage upon the lots in question to secure the payment of their notes, and that the said agreement did not operate to give notice to Goodwin that the vendors were claiming a prior and superior vendor's lien upon the said lots. The court gave the Hensons and Marie Zumwalt a lien upon the lots, subject and inferior to the Goodwin mortgage lien.

The appellants challenge the findings of the court on the vital issue of notice and knowledge, which they contend was imputed to the appellee, Goodwin, when he took his mortgage. They urge that Goodwin took the mortgage, which he now asserts, with actual knowledge that the purchase price for the lots was $12,000.00, that the $5,000.00 which the Morrisons borrowed at the bank was to be used as the down payment, leaving a balance of $7,000.00 unpaid, for which the vendors are accorded a superior vendor's lien, and with such knowledge, Goodwin is put upon notice of the lien and is charged with the duty to make inquiry concerning the true relationship of the parties. They further earnestly contend that the agreement to give the second mortgage on the property in the event no buildings were constructed thereon was filed of record on July 7, 1940, before the mortgage was given on January 28, 1941, hence Goodwin is charged with constructive notice of the agreement and all of the facts and circumstances surrounding the same; that Goodwin knew therefore that since no buildings were constructed on the lots as contemplated, the vendors are entitled to assert a superior lien for the unpaid purchase price, and as a consequence the execution and delivery of the mortgage from Morrison to Goodwin was a fraudulent act of preference

which gave Goodwin no superior rights under it.

▮ It is a well established general principle of ancient origin that a vendor or grantor of land, though he has made an absolute conveyance by deed, has an equitable lien for the unpaid purchase price, unless there has been an express or implied waiver of it, and this lien will be enforced in equity against the vendee and all persons holding under him, except bona fide purchasers and mortgagees without notice. DeCordova v. Hood, 17 Wall. 1, 84 U.S. 1, 21 L.Ed. 587; Fisher v. Shropshire, 147 U.S. 133, 13 S.Ct. 201, 37 L.Ed. 109; Slide & Spur Gold Mines v. Seymour, 153 U.S. 509, 14 S.Ct. 842, 38 L.Ed. 802; 3 Pomeroy, 4th Ed., 1249. The lien is of equitable cognizance and is rooted in the common law. It is enforceable in the Federal courts where recognized by the law of the state in which it is asserted. Fisher v. Shropshire, supra; Slide & Spur Gold Mines v. Seymour, supra. It is recognized in New Mexico, and predicated upon the trust theory. Bates v. Childers, 4 N.M., John., 347, 5 N.M., Gild., 62, 20 P. 164; Watson v. First National Bank, 23 N.M. 372, 168 P. 488, 490; Davidson v. Click, 31 N.M. 543, 249 P. 100, 104, 47 A.L.R. 1016.

▮ It seems to be equally well established that the lien is presumed to attach at the time of the sale unless there is an express waiver of it. The lien may be waived by the manifest action and conduct of the parties, or the waiver may be explicit in the transaction, such as the taking of notes or other security for the unpaid purchase price, in which event a new and different obligation is substituted for the debt. But an intent to waive is not presumed, it must be clear and satisfactory. The conduct of the parties must be inconsistent with the intent to retain or to assert the lien. 3 Pomeroy, 4th Ed., 1252; DeCordova v. Hood, supra; Fisher v. Shropshire, supra; Slide & Spur Gold Mines v. Seymour, supra; Griffin v. Smith, 8 Cir., 143 F. 865; Cassidy v. Ward, 70 Ind.App. 550, 123 N.E. 724; Marchand v. Chicago, B. & Q. Ry. Co., 147 Mo. App. 619, 127 S.W. 387, 389.

The question then is whether the vendors retained a lien upon the property for the unpaid purchase price, and if so did the agreement to take a second mortgage, coupled with the conduct of the parties, constitute a waiver of the same. The question also involves the actual and constructive notice imputed to Goodwin before and at the time his mortgage was executed.

Both the appellant and appellee fully understood that Morrison planned to construct tourist apartments and a filling station on the lots, and to do this it was necessary for Morrison to borrow the money and to that end to encumber the property by the execution of a first and prior mortgage upon it to whomsoever advanced the money for that purpose. This much is manifest by the conduct of the parties. Morrison had no money; he didn't have the down payment for the purchase price of the lots. This he borrowed upon the credit of Goodwin and Gibson who understood that the $5,000.00 was only the down payment for the lots. They expected the loan from the bank to be paid from the revenue of the completed project, if it was completed, and if not, they were to receive a mortgage on the lots as security for their signature on the note. The findings of the court to the effect that Morrison represented to Goodwin and Gibson that he would secure clear title to the property upon the payment of $5,000.00 is buttressed by the common understanding that clear title to the property was necessary and essential to the ultimate construction of the buildings on the lots. Goodwin and Gibson protected themselves as far as legally possible consistent with the necessities of the case. When the note to the bank matured and it became necessary to secure the signatures of Goodwin and Gibson for a renewal of the same, no buildings had been constructed upon the lots. It was then that Morrison fulfilled his agreement to execute a mortgage on the lots to secure the payment of the renewed note when due ninety days hence. In these circumstances, it cannot be said that the execution of the mortgage constituted a fraudulent or unauthorized preference, if it be called a preference. Moreover, there is nothing to indicate that the execution of the mortgage was not in good faith, or was intended to effect a fraudulent preference of creditors.

The vendors, likewise realizing that clear title in Morrison was necessary to the realization of the plans, took his $5,000.00 and gave him a deed to the property. Furthermore, they took his personal notes for the balance, and "trusted his honesty to that extent." The vendors realized that they were "playing" with Morrison, at least to the extent that he would be able to construct suitable buildings on the property in order to produce revenue for the unpaid purchase price. But they also wanted to be protected in the event the project failed, consequently they took Morrison's written agreement to execute a second mortgage on the property when the buildings were constructed thereon, or within one year from the date of the sale. This they filed of record and it was constructive notice " * * to all the world of its existence and contents * * ". C.S. 1929, Sec. 118-109; 13-202, NMSA. But where information of a specific claim or right is given to a person or to the world by recordation of an instrument manifesting such claim or right, the information contained therein is operative only in respect to the particular facts communicated thereby, and it will not serve to put the parties charged with such notice upon inquiry as to any other or different right. City National Bank of Duncan v. Soderberg, 171 Okl. 369, 43 P.2d 495; Rohde v. Rohn, 232 Ill. 180, 83 N.E. 465, 468; Thompson v. Lapsley, 90 Minn. 318, 96 N.W. 788. Cf. Security State Bank v. Clovis Mill & Elevator Co., 41 N.M. 341, 68 P.2d 918.

It seems plain therefore that at the time Goodwin took his mortgage he was charged with constructive notice of Morrison's agreement to execute a second mortgage on the property when the buildings were constructed on the lots, or in any event within one year after the date of the sale. Such notice did not charge Goodwin with knowledge of the vendor's intention to retain a vendor's lien upon the property for the unpaid purchase price. An agreement to give a second mortgage cannot be construed as a vendor's lien; the two are inconsistent and irreconcilable.

We conclude that the findings of the trial court are amply supported by the record, are not clearly erroneous, and its conclusions thereon are correct. The judgment is affirmed.